In re **MERRIMACK MUTUAL FIRE INSURANCE COMPANY**, Petitioner.

No. 78–3036.

United States Court of Appeals, Fifth Circuit.

Sept. 28, 1978.

On Rehearing Dec. 21, 1978.

Ross, Griggs & Harrison, Charles W. Kelly, Houston, Tex., for appellant.

Finis E. Cowan, pro se.

Butler, Binion, Rice, Cook & Knapp, Robert M. Hardy, Jr., Reynolds, Allen & Cook, Houston, Tex., for respondent.

Before GODBOLD, RONEY and RUBIN, Circuit Judges.

BY THE COURT:

IT IS ORDERED that the petition for writ of mandamus is DENIED.

## ON PETITION FOR REHEARING

GODBOLD, Circuit Judge:

The petitioner seeks a writ of mandamus to compel a district judge to retain in federal district court a diversity case which he has ordered remanded to state court. We denied the petition without statement of reasons, and we now consider petitioner's application for rehearing. The record is not a model of clarity, but we need not completely unravel the facts and legal assertions of the parties to decide whether a writ should issue. We conclude that no writ should issue and deny the petition for rehearing.

The following appears to be the situation, as drawn from the records and briefs of the parties. As far as we can tell, the facts recited are undisputed unless otherwise indicated. Allied Fairbanks Bank ("Bank") filed suit in Texas state court against petitioner Merrimack Mutual Fire Insurance Company for proceeds allegedly due it as mortgagee and loss payee under an insurance policy covering the home of Bobby and Debrah Cox. This house had been partially destroyed by fire. Merrimack removed the case to federal district court on the basis of diversity between it and the Bank. Merrimack filed an answer denying that the Bank had any insurable interest in the Cox residence and that the Bank had suffered any loss because of the fire. Merrimack then moved for summary judgment. Merrimack's denial of liability was premised on an allegation that the Bank, by the time it filed a damages claim with Merrimack, had foreclosed the mortgage on the Cox residence and from the foreclosure sale had received payment in full of the amount owed the Bank by the Coxes.

In response the Bank filed an amended complaint, alleging that although documents did show that the Bank had suffered little or no damage because of the fire, this was not the true state of affairs. According to the Bank, the Coxes had originally bought the house from Debrah's father, K. W. McDowell, giving him in payment a promissory note (the "Cox note") and a Deed of Trust in the property. McDowell endorsed this note over to the Bank, with full recourse, and assigned to the Bank his interest in the Deed of Trust. Prior to the fire the Coxes defaulted on their promissory note, and the Bank looked to McDowell for payment. The Bank agreed to sell the house to McDowell's agent rather than foreclosing, so that the house might be sold

on the open market. The Bank, McDowell, and a real estate agent, Smuts, drew up documents conveying the house to Smuts and cancelling the Coxes' obligation, in return for Smuts' and McDowell's execution of a promissory note ("Smuts-McDowell note") to the Bank. The understanding was that the Smuts-McDowell note would be paid off with the proceeds from the sale of the house. Before these documents were executed, however, the house burned, and the value of the property was greatly reduced. After the fire McDowell, Smuts, and the Bank allegedly reconsidered their earlier agreement and agreed that the Bank would file a claim with Merrimack for the fire losses, and the proceeds received from the insurance company would be set off against the amount Smuts and McDowell had agreed to pay the Bank for the Cox residence. The parties failed, however, to incorporate this revision into the documents that had been drawn up before the fire. These documents were executed without alteration. Thus from the face of the documents it appears that the Bank sold the house after the fire for a price that reflected the house's pre-fire value and accordingly suffered little or no damage from the fire. The Bank in its amended complaint moved to add Smuts and McDowell as defendants, and added to their plea for relief requests (a) that the documents of the Smuts-McDowell sale be reformed to reflect the subsequent revisions in the agreement of the parties and (b) that if Merrimack was held not liable to the Bank, Smuts and McDowell be held liable on the Smuts-McDowell note as executed.

Subsequently the Bank moved for remand to state court, arguing that Smuts and McDowell were indispensable parties. Since Smuts and McDowell are Texas residents, as is the Bank, their joinder would destroy complete diversity.

The district judge granted the motion to remand. His order reads in full:

This case was removed from state court to this Court due to the existence of diversity of citizenship between the original parties. Subsequent to removal, two additional persons were included as defendants. It is apparent that no diversity exists between the plaintiff and the new defendants, Rex N. Smutts and K. W. McDowell. Accordingly, this Court no longer has jurisdiction over this matter, and the entire case should be, and is hereby, REMANDED back to state court for appropriate disposition.

Merrimack filed its petition with this court seeking a writ, and we denied it without statement of reasons. On petition for rehearing the matter has been fully briefed.

In *Thermtron Products, Inc. v. Hermansdorfer,* 423 U.S. 336, 96 S.Ct. 584, 46 L.Ed.2d 542 (1976), the Supreme Court set forth three holdings, all relevant to the instant case. First, the Court held that 28 U.S.C. § 1447(c), which provides for remand on the ground that "the case was removed improvidently and without jurisdiction," states the *exclusive* grounds for remand. 423 U.S. at 344–45 & n. 9, 96 S.Ct. at 589–90, 46 L.Ed.2d at 550.

Second, the Court held that 28 U.S.C. § 1447(d), which seemingly bars all appellate review of district court remand orders,[1] instead bars review only of remand orders based on the grounds permitted by the statute, 423 U.S. at 352–53, 96 S.Ct. at 593–94, 46 L.Ed.2d at 554, and does not "extinguish the power of an appellate court to correct a district court that has not merely erred in applying the requisite provision for remand but has remanded a case on grounds not specified in the statute and not touching on the propriety of the removal." *Id.* at 352, 96 S.Ct. at 593, 46 L.Ed.2d at 554. If, however, the remand order states that it is based on 1447(c) statutory grounds, it is immune from review by an appellate court. *See id.* at 343, 96 S.Ct. at 589, 46 L.Ed.2d at 549.

---

1. Section 1447(d) reads:

"An order remanding a case to the State court from which it was removed is not reviewable on appeal or otherwise, except that an order remanding a case to the State court from which it was removed pursuant to section 1443 of this title shall be reviewable by appeal or otherwise."

Merrimack does not contend that this case is reviewable under § 1443.

Third, the Court held the writ of mandamus was an appropriate means by which to require a district court to hear an erroneously remanded action. 423 U.S. at 352–53, 96 S.Ct. at 593–94, 46 L.Ed.2d at 554–55. In sum the *Thermtron* Court held that when a district court enters a remand order that is not only erroneous but also states that it is based on non-statutory grounds, issuance of a writ of mandamus by an appellate court is an appropriate remedy.

The district court here did not unambiguously state a reason for remand that is included in the 1447(c) grounds. Thus, there are two principal issues.[2] The first issue is whether the district judge stated in his order that he was relying on a ground for remand not included in those on which § 1447(c) permits remand. If he did state such a non-statutory reason, mandamus would appropriately issue, commanding him to retain the case for trial. The second issue, which we need reach only if we conclude that the district judge did not affirmatively state a non-1447(c) ground for remand, is whether mandamus is appropriately used to order a district judge to state unambiguously the grounds for remand in order that the appellate court may determine whether the district judge meant to rely on a 1447(c) ground or a non-1447(c) ground. This issue was not resolved by *Thermtron.*

We cannot determine from the face of the order whether the district judge relied on a non-1447(c) ground in ordering remand. Merrimack suggests that it is clear from the face of the order that the remand was premised on a non-1447(c) ground. Its argument is based on the differences in syntax between the language of the district judge's order and the text of 1447(c). According to Merrimack, the tense of the "was removed" in § 1447(c) dictates the conclusion that in considering whether a remand is appropriate a district judge should consider only whether *at the time of removal* the case was "improvidently" brought into federal court or removed "without jurisdiction." Hence the district court should resolve issues relating to its jurisdiction based only on the facts of the case as they existed at the time of removal and should ignore any subsequent developments in the case (such as the addition of parties). Merrimack further argues that the language of the order clearly shows that the district judge considered circumstances occurring after removal and erroneously did not limit himself to the question whether the court had jurisdiction at the moment of removal. Moreover, Merrimack argues, it is inconceivable that the district judge could have meant that he did not have jurisdiction at the time of removal or that removal was "improvident" at that time. As the parties then appeared there was obviously complete diversity, the necessary amount was in controversy, and all procedural requirements for removal had been satisfied.[3] Thus, Merrimack contends, *Thermtron* commands the issuance of mandamus because the remand was "on grounds wholly different from those on which § 1447(c) permits remand."

■ We agree that it is apparent from the face of the order that the district judge considered events occurring after removal, that is, the joinder of Smuts and McDo-

---

**2.** The Bank also argues that Merrimack's failure to object to the addition of Smuts and McDowell as parties until after the district judge granted the Bank's remand motion estops Merrimack from now objecting to their addition as parties. The source cited, 1A Moore's Federal Practice ¶ 0.161[1], at 209 (2d ed. 1974), does not support this proposition. Moreover, since the record does not show that the district judge ruled on the Bank's joinder motion at any time before ordering the remand, it is difficult to see how Merrimack could have acted other than it did. We reject the argument.

**3.** Removal cannot have been improvident if all procedural requirements, *e. g.,* timely filing, have been satisfied. *See In re Southwestern Bell,* 542 F.2d 297, 298 n. 1 (CA5, 1976) (en banc), *rev'd on other grounds sub nom. Gravitt v. Southwestern Bell Tel. Co.,* 430 U.S. 723, 97 S.Ct. 1439, 52 L.Ed.2d 1 (1977). Note, *Remand Order Review After Thermtron Products,* 1977 U.Ill.L.F. 1086, 1092–93 (legislative history of § 1447(c) shows that "improvidently" means legally defective). *Cf. London v. United States Fire Ins. Co.,* 531 F.2d 257 (CA5, 1976) (removal is "improvident" if 30-day filing requirement of 28 U.S.C. § 1446 is not complied with).

well.[4] We do not agree, however, that the language of § 1447(c) allows a remand only if there was no jurisdiction at the time of removal.

Fifth Circuit precedent prior to *Thermtron* was clear. If, in a removal case based on diversity of parties, the district court subsequently discovered that parties who are indispensable under Rule 19, F.R. Civ.P., had not been joined, the district court should have remanded the case to state court. *See Jett v. Zink*, 362 F.2d 723, 726 (CA5), *cert. denied*, 385 U.S. 987, 87 S.Ct. 600, 17 L.Ed.2d 448 (1966); *Hilton v. Atlantic Refining Co.*, 327 F.2d 217, 219 (CA5, 1966); *accord*, 1A *Moore's Federal Practice* ¶ 0.161[1], at 209 (2d ed. 1974). The Fifth Circuit has squarely rejected the argument that "the right to remove depends upon the case disclosed by the pleadings when the petition for removal is filed and that the subsequent addition of new parties is not to be considered on a motion to remand." *Jett v. Zink, supra,* at 726. Merrimack does not suggest that this longstanding rule has been overruled by *Thermtron* or any other case. Instead it argues that the rule is not applicable to this case because it does not involve indispensable parties but instead only parties joined at the discretion of the district judge.

This argument begs the question of how the district judge's order should be construed. Under *Thermtron* our task is to ascertain from the district judge's order whether he relied on a non-1447(c) ground for remand. Perhaps it can be persuasively argued that the language of § 1447(c) allows the district judge to consider on a motion for remand the addition after removal of indispensable parties but not other parties,[5] but there is no indication on the face of the judge's order that he was drawing such fine distinctions.[6] We simply cannot tell from the face of the remand order what grounds the district judge relied on in ordering remand. Therefore, this case is not controlled by *Thermtron*, in which the Court emphasized the clarity with which the district judge affirmatively based his remand order on a non-statutory ground (overcrowded docket). As Justice Rehnquist pointed out in his dissent, the *Thermtron* Court "relies upon its belief that respondent's order made clear that he was not acting in accordance with § 1447(c)." 423 U.S. at 357, 96 S.Ct. at 596, 46 L.Ed.2d at 557.[7]

Instead the instant case is more analogous to the hypothetical case posed by Justice Rehnquist in his dissenting opinion in *Thermtron* : "[T]here was no requirement that respondent issue any explanation of the grounds for his remand order, and there is no reason to expect that district courts will always afford such explanations. If they do not, is there now [after *Thermtron* ] jurisdiction in the courts of appeals to com-

---

**4.** The language beyond cavil refers to the jurisdiction of the court as judged at some point after removal:

"*Subsequent* to removal, two additional persons were included as defendants. It is apparent that no diversity exists between the plaintiff and the *new defendants*, Rex N. Smutts and K. W. McDowell. Accordingly, this Court *no longer has jurisdiction* over this matter, and the entire case should be, and is, hereby REMANDED. . . . " (Emphasis supplied)

**5.** A conceptualization of a case to which indispensable parties have not been joined as somehow "incomplete" at the time of removal is not wholly implausible.

**6.** It might also be argued, less persuasively, that once a case is removed, the subsequent joinder of indispensable parties calls not for a remand but for a dismissal. This rule would require reversal of the above-cited Fifth Circuit precedent and would place litigants who removed diversity suits to federal courts at risk that their cases would subsequently be dismissed and possibly barred from relitigation in state courts by state statutes of limitation.

**7.** The district court in *Thermtron* specifically conceded that all relevant statutory requirements were satisfied and that the petitioner had a "right" to remove the action. 423 U.S. at 340, 96 S.Ct. at 587, 46 L.Ed.2d at 548. The Supreme Court stressed the district judge's specific refusal to rely on statutory grounds. *E. g.*, "Neither the propriety of the removal nor the jurisdiction of the court was questioned by respondent in the slightest." *Id.* at 343–44, 96 S.Ct. at 589, 46 L.Ed.2d at 550. (Emphasis added); "This consideration [crowded docket] is *plainly* irrelevant . . . ." *Id.*

pel an explanation so as to evaluate potential claims that the lower court was not acting pursuant to subsection (c)?" Because we cannot ascertain from the district judge's order whether he based his remand on the clearly proper ground that Smuts and McDowell are indispensable parties or on the clearly improper ground that, although they are not indispensable parties, joinder (and hence remand) was nevertheless called for,[8] we must here answer Justice Rehnquist's dissenting query. Our answer is "no."

The majority opinion in *Thermtron* provides little guidance because it deals only with extreme cases. If the district judge affirmatively states a non-1447(c) ground for remand, mandamus is appropriate; if he states that he relies on a 1447(c) ground, mandamus is not appropriate. We deal with a case in the middle. The district judge has not affirmatively stated an improper ground for remand, but neither has he affirmatively stated a proper ground for remand. If we were writing on a clean slate we might be persuaded to hold that a court of appeals may use mandamus to require a district court to state its reasons for a remand order. It can be argued that such an appellate court power is necessary if the review power recognized in *Thermtron* is to have any broader significance, for the open rebellion of the district judge in *Thermtron* is certainly a rare exception to the general rule, and if an appellate court does not have such power, even a flagrant error in the exercise of a district judge's power to remand will be immunized from review by the simple omission of a statement of reasons for the remand. There is even language in the majority opinion that arguably lends some support to this result.[9]

We are not, however, writing on a clean slate, for the Supreme Court has since *Thermtron* made it clear that it was not announcing a plenary rule that review of remand orders can be had whenever the court of appeals is able to ascertain that error has occurred. Instead it is now clear that *Thermtron* announced only a narrow rule that was intended to be limited to the extreme facts of that case, in which a district judge stated openly that he was relying on a non-1447(c) ground for remand. The *Thermtron* Court never stated that it was willing to construe the seemingly-absolute bar of § 1447(c) as extending beyond

---

8. The Bank argues that even if Smuts and McDowell are not indispensable, it lay within the district judge's discretion to allow their joinder even though it destroyed diversity. All of the authorities cited supporting this proposition pre-date *Thermtron, see Harper Fin. Corp. v. Hanson Oil Corp.*, 403 F.Supp. 1405 (W.D. Tenn.1975); *Ingersoll v. Pearl Assurance Co.*, 153 F.Supp. 558 (N.D.Cal.1957); 1A *Moore's Federal Practice* ¶ 0.161[1], at 209 (2d ed. 1974); and *Thermtron* makes it clear that such discretion is not vested in the district judge. As discussed above, *Thermtron* holds that § 1447(c) states the *exclusive* grounds on which a remand order may be based. The "improvidently" language of § 1447(c) evidently was not read by the court to vest discretion in the district court. The Court stated: "We are not convinced that Congress ever intended to extend carte blanche authority to the district courts to revise the federal statutes governing removal by remanding cases on grounds that seem justifiable to them but which are not recognized by the controlling statute." 423 U.S. at 351, 96 S.Ct. at 593, 46 L.Ed.2d at 554. Second, prior to the 1948 revisions of section 1447(c), "improper" was used rather than "improvidently." The *Thermtron* court considered the substitution of words in 1447(c) to be of

"no moment." *Id.* at 350 n. 15, 96 S.Ct. at 592, 46 L.Ed.2d at 553–54. While "improvidently" may have connotations of discretion, "improper" contains no such overtones. Third, that a writ of mandamus was used to correct the district court error in *Thermtron* suggests that the district court is not vested with discretion under § 1447(c), for traditionally mandamus will not lie to correct an abuse of discretion but only to order a ministerial act. *Work v. U. S. ex rel. Rives*, 267 U.S. 175, 177, 45 S.Ct. 252, 69 L.Ed. 561, 562 (1925). We conclude that a district court may remand a case as being "improvidently" removed only if one of the statutory, non-jurisdictional requirements for removal has not been satisfied. *See Haelan Laboratories, Inc. v. Topps Chewing Gum, Inc.*, 131 F.Supp. 262 (E.D.N.Y., 1955); note 3 *supra*.

9. At one point the Court says that "only remand orders issued under § 1447(c) and *invoking the grounds specified therein* . . . are immune from review." 423 U.S. at 346, 96 S.Ct. at 590, 46 L.Ed.2d at 551. *See* 12 Wake Forest L.Rev. 1031, 1039 (1976) (suggesting that appellate courts use mandamus to compel a statement of reasons).

**648**

the exceptional facts of that case, and a subsequent case has demonstrated its unwillingness to do so.

If the Supreme Court had intended the *Thermtron* decision to have any broader application beyond the extreme situation presented by that case, perhaps the most natural extension would have been to permit appellate courts to correct remand orders that are plainly incorrect on their face, even where the district judge has specifically concluded that the removal was improper because it was done "improvidently and without jurisdiction." [10] The Court has, however, specifically refused to extend *Thermtron* in this way in *Gravitt v. Southwestern Bell Tel. Co.,* 430 U.S. 723, 97 S.Ct. 1439, 52 L.Ed.2d 1 (1977). District Court invocation of § 1447(c) will preclude review of a remand order no matter how clearly erroneous the order appears on its face. *See In re Southwestern Bell Tel. Co.,* 542 F.2d 297, 298–300 (CA5, 1976) (Hill, J., dissenting), *rev'd sub nom. Gravitt v. Southwestern Bell Tel. Co., supra*; Rible, *Federal Courts: Review of the Remand Order,* 10 St. Mary's L.J. 274, 287 (1977) ("Apparently, [after *Gravitt*] a remand order which so much as mentions 'improper removal' will be precluded from review.").

After *Gravitt*, it appears that *Thermtron* was intended to be strictly limited to those cases in which a district judge has actually stated that he is not relying on § 1447(c) in ordering a remand. It is, at any rate, clear that the Court did not intend to authorize more general review than that specifically permitted in *Thermtron*, and that instead the Court intends to remain on "the narrow bridge . . . constructed . . . in *Thermtron*." *Southwestern Bell, supra,* 542 F.2d at 300 (Hill, J., dissenting).

■ In the light of this previous refusal to extend *Thermtron* we are not willing here to construe *Thermtron* to mean that the § 1447(d) proscription of review is no bar to an appellate court's use of mandamus to compel a district court to state unambiguous reasons for a remand order. Our conclusion is buttressed by a further consideration. The purpose of the § 1447(d) bar on appellate review of remand orders is to avoid delay in reaching the merits in a case because of "protracted litigation" over whether the case is in the proper court. *Thermtron Products, supra,* 423 U.S. at 351, 96 S.Ct. at 593, 46 L.Ed.2d at 554. The issuance of mandamus compelling a district judge to state his reasons, with a likely subsequent petition to the court of appeals for another mandamus writ, would entail substantial delays, more delay in fact than the appellate power rejected in *Gravitt* would have entailed. We cannot believe, particularly after *Gravitt*, that the Supreme Court will extend the *Thermtron* decision in a way that has such great "potential for abuse by those seeking only to delay." *Thermtron Products,* 423 U.S. at 357, 96

**10.** Justice Rehnquist pointed out in dissent that this extension of *Thermtron* (as well as extension to allow appellate courts to compel a district court statement of reasons) was a natural consequence of *Thermtron*, if the case was to have any significant effects. After posing the question whether appellate courts could compel a statement of reasons from a district court, he goes on:

"And what if the district court does state that it finds no jurisdiction, using the rubric of § 1447(c), but the papers plainly demonstrate such a conclusion to be absurd? Are potential challengers to such an order entitled to seek the aid of the court of appeals, first to demonstrate that the order entered by the lower court was a sham and second to block that order pursuant to today's decision? If the court's grant of certiorari and order of reversal in this case are to have any meaning,

it would seem that such avenues of attack [including compelling a statement of reasons] should clearly be open to potential opponents of orders of remand."

423 U.S. at 357, 96 S.Ct. at 596, 46 L.Ed.2d at 557–58. Other commentators also concluded that the power to pierce a district court's bare recitation of the § 1447(c) language was essential if *Thermtron* were to have any substantial effect: "The purpose of mandamus is to correct discretionary abuse. If such abuse may be precluded from review simply by masking the remand order as being pursuant to 'improper removal,' the avenue of appeal opened in *Thermtron* becomes virtually nonexistent." Rible, *Federal Courts: Review of the Remand Order,* 10 St. Mary's L.J. 274, 286 (1977). *See* Note, *Remand Order Review After Thermtron Products,* 1977 U.Ill.L.F. 1086, 1104–05; 12 Wake Forest L.Rev. 1031, 1039 (1976).

S.Ct. at 596, 46 L.Ed.2d at 558 (Rehnquist, J., dissenting).

We need not examine whether Smuts and McDowell are in fact indispensable parties.

The writ of mandamus is DENIED.