**IMFC PROFESSIONAL SERVICES OF FLORIDA, INC., Plaintiff-Appellee,**

v.

**LATIN AMERICAN HOME HEALTH, INC., and Osvaldo De La Pedraja, Defendants-Appellants,**

v.

**Richard S. SCHWEIKER, Secretary of Health and Human Services, Third-Party Defendant-Appellee.**

**No. 80–5085.**

United States Court of Appeals, Fifth Circuit.*
Unit B

May 17, 1982.

---

* Former Fifth Circuit case, § 9(1) of Public Law 96–452—October 14, 1980.

Greene & Cooper, Marc Cooper, Miami, Fla., for defendants-appellants.

Freidin & Silber, Norman J. Silber, Miami, Fla., for IMFC Professional Services of Fla., Inc.

Richard A. Marshall, Jr., Asst. U. S. Atty., Miami, Fla., for Patricia Roberts Harris.

Before GODBOLD, Chief Judge, TJOFLAT and THOMAS A. CLARK, Circuit Judges.

GODBOLD, Chief Judge:

Appellant Latin American provides home health care, and many of its patients are covered by Medicare. Latin American entered into a contract with IMFC under which IMFC would purchase from Latin American, at a discount, receivables of Latin American. These receivables consisted of reimbursements due Latin American under the Medicare program from the Department of Health and Human Services ("HHS") (or its predecessor HEW) through its fiscal intermediary Aetna Life and Casualty Insurance Company. Payments were to be made by Aetna directly to IMFC. Latin American was obligated to repurchase from IMFC at face value all receivables not collected by IMFC within eight months. Pedraja, Latin American's medical director, acted as guarantor of Latin American's obligations under this agreement.

After a few months under this contract Aetna ceased paying IMFC directly, on the asserted ground that the discount on the purchased accounts was improper because it was an implicit interest charge, and began paying Latin American on the purchased accounts instead. IMFC demanded that, pursuant to the repurchase agreement, Latin American repurchase the accounts that it had not collected. Latin American refused. IMFC sued Latin American, Pedraja, and Aetna in Florida state court claiming some $150,000 due it under the agreement with Latin American. HHS intervened as a defendant and removed the case to federal district court. IMFC voluntarily dismissed as to Aetna and HHS, leaving as defendants only Latin American and Pedraja, and moved to remand the case to state court. The motion was granted.

Back in state court, Latin American and Pedraja filed a third-party complaint against Aetna. HHS again intervened, as the real party in interest in the stead of Aetna, and again removed to the federal court.

Back in federal court again, HHS moved to dismiss Latin American's and Pedraja's third-party complaint against HHS, on the ground, inter alia, that the court lacked subject matter jurisdiction because Latin American had failed to exhaust administrative remedies. The court granted this motion. At the same time it considered IMFC's motion for summary judgment against Latin American and Pedraja, supported by affidavits, and, rejecting defenses of Latin American and Pedraja (principally that of usury), granted to IMFC the full amount it claimed.

Defendants contend that, after the second removal, when the district court determined that the third-party complaint of Latin American and Pedraja against HHS (intervening defendant as real party in interest in the stead of Aetna) was not properly before the court because of their fail-

ure to exhaust administrative remedies, the only matter remaining before the court was a state law claim between nondiverse parties concerning liability under the purchase agreement and the guaranty; thus the district court lacked jurisdiction to consider summary judgment and was instead required to remand the case a second time to state court.

## I. District court jurisdiction

### A. The initial jurisdiction to remove

The statute governing remand after removal is 28 U.S.C. § 1447(c).[1] Under it we look first to whether the case "was removed improvidently and without jurisdiction." We conclude that there was initially jurisdiction for the second HHS removal.

■ First, that HHS, the removing party, is a third-party defendant does not defeat removal under 28 U.S.C. § 1442(a)(1).[2] 1A J. Moore, *Federal Practice* ¶ 0.164[1], at 303–04.[3]

■ Second, arguably the failure of Latin American and Pedraja to exhaust their administrative remedies is a jurisdictional defect depriving the court of subject matter jurisdiction over the complaint against the government, with the result that removal was initially improper. The only prerequisite to removal of a civil action under § 1442 is that it be *brought against* a federal officer or agency. There is no indication in § 1442 that the federal court must have subject matter jurisdiction over the claim against the federal officer.[4] To the contrary, § 1442 itself grants independent jurisdictional grounds over cases involving federal officers where a district court otherwise would not have jurisdiction.[5] *S.S. Silberblatt, Inc. v. East Harlem Pilot Block*, 608 F.2d 28, 35 (2nd Cir. 1979).

### B. Authority to consider post-removal developments

There remains open whether, though the second removal was initially proper, remand was required because of post-removal events. Once the court dismissed defendants' third-party complaint against the federal defendant, was it required to remand?

We reasoned in *In re Merrimack Mutual Fire Ins. Co.*, 587 F.2d 642, 645–46 (5th Cir.

The district court dismissed the government for lack of jurisdiction and remanded to the state court. On appeal the court affirmed the dismissal of the United States as party to the suit. The court held, however, that it did not have appellate jurisdiction to decide the propriety of the subsequent and distinct remand order. Therefore, despite the discussion in the case concerning the propriety of initial removal, it was not held that a subject matter jurisdiction defect in the state court is ground for remand of a case removed under § 1442. *Armstrong* is consistent, then, with the conclusion that there was initial removal jurisdiction and that if remand were appropriate it became so only after the federal officer was dismissed.

A distinction is to be drawn between subject matter and personal jurisdiction. Proper service of process on the federal officer in the state court case is a precondition to removal under § 1442. *Housing Authority v. Millwood*, 472 F.2d 268, 270, 272 (5th Cir. 1973); *Martinez v. Seaton*, 285 F.2d 587 (10th Cir. 1961).

---

1. Section 1447(c) reads:

 If at any time before final judgment it appears that the case was removed improvidently and without jurisdiction, the district court shall remand the case, and may order the payment of just costs.

2. Section 1442(a)(1) reads in part:

 (a) A civil action or criminal prosecution commenced in a State Court against any of the following persons may be removed by them to the district court of the United States for the district and division embracing the place wherein it is pending:
 (1) Any officer of the United States or any agency thereof, or person acting under him, for any act under color of such office . . . .

3. Our holding is not inconsistent with *Westwood Development Co. v. Higley*, 266 F.2d 555, 558 (5th Cir. 1959) where removal by a third-party defendant government official was said to be improper because the case was considered to have been removed under § 1441(c), the separate claim removal provision, not under § 1442(a)(1).

4. We do not read *Armstrong v. Alabama Power Co.*, 667 F.2d 1385 (11th Cir., 1982) as deciding this issue to the contrary. There, the United States removed as a third party defendant.

5. Lack of subject matter jurisdiction is a defect in the initial removal of a case under § 1441 but only because such a removal is premised on the district court's having original jurisdiction over the case.

1978), that § 1447(c) permits examination of subsequent developments to determine whether a case should be remanded. In this case we adhere to and amplify that reasoning.

Section 1447(c) was substantially enacted in 1948 when Title 28 was generally revised. Section 1447(c)'s predecessor, § 80, read:

> If in any suit *commenced in a district court, or removed from a State Court to a district court* of the United States, it shall appear to the satisfaction of the said district court, at any time after such suit has been brought or removed thereto, that such suit does not really and substantially involve a dispute or controversy properly within the jurisdiction of said district court, ... the said district court shall proceed no further therein, but shall dismiss the suit or remand it to the court from which it was removed, as justice may require, and shall make such order as to costs as shall be just. (Emphasis added).

28 U.S.C. § 80 (1946). Thus, under the old practice there was a unitary standard concerning a court's loss of jurisdiction: the same statute controlled whether the suit was brought within the court's original jurisdiction or was removed to the court. *See, e.g., St. Paul Mercury Indemnity Co. v. Red Cab Co.*, 303 U.S. 283, 58 S.Ct. 586, 82 L.Ed. 845 (1938) (resolving remand after removal issue by relying on general jurisdictional principles).

▇ In *Thermtron Products, Inc. v. Hermansdorfer*, 423 U.S. 336, 349 & n.15, 96 S.Ct. 584, 592 & n.15, 46 L.Ed.2d 542 (1976), the Supreme Court analyzed extensively the legislative history of § 1447(c) with regard to the issue of reviewability of remand orders. The Court concluded that § 1447(c) was "intended to restate the prior law" and that § 1447(c) and the old § 80 were of "identical substantive content." *Id.* For

these same reasons, we think that § 1447(c) continues in effect the unitary standard of old § 80. Therefore, in deciding whether to remand a removed case, we use the same analysis as in deciding whether to dismiss a case initially filed in the district court.[6]

▇ Under general jurisdictional principles as well as under removal principles, some subsequent developments in a case do not affect a court's prior-existing jurisdiction. *See In re Carter*, 618 F.2d 1093, 1101 (5th Cir. 1980) ("It is a fundamental principle of law that whether subject matter jurisdiction exists is a question answered by looking to the complaint as it existed at the time the petition for removal was filed."). For example, amendment of a complaint to reduce the damages claimed below the jurisdictional amount or to eliminate a federal question does not oust a court of jurisdiction (absent sham pleading), nor does destruction of diversity by a party's change in citizenship or in certain instances by intervention of a new party. For collected cases and discussion, *see generally, Murphy v. Kodz*, 351 F.2d 163, 167 (9th Cir. 1965); Decisions, 41 *Colum.L.Rev.* 738 (1941); Recent Cases, 19 *Geo.Wash.L.Rev.* 354 (1954); Wright & Miller, *Federal Practice and Procedure* § 3608, at 658–59 (1975). On the other hand, other developments in a case will divest the court of jurisdiction. *E.g., Merrimack*, 587 F.2d at 646, 647 n.8 (addition of a nondiverse party); Wright & Miller, *Federal Practice and Procedure* § 3608, at 657–58 (1971) (same); *Texas Transp. Co. v. Seeligson*, 122 U.S. 519, 7 S.Ct. 1261, 30 L.Ed. 1150 (1887) (under old law, elimination of diverse claim in a multiclaim suit results in remand of nondiverse claims).

▇ Because § 1447(c) has the "identical substantive content" as its predecessor § 80 and because under § 80 some subsequent

---

**6.** Our holding is restricted to whether jurisdiction once conferred is lost. The principles governing whether an initial defect in jurisdiction can be cured may differ between removed and original jurisdiction cases. For example, the rule in *Pullman Co. v. Jenkins*, 305 U.S. 534, 537, 59 S.Ct. 347, 348, 83 L.Ed. 334 (1938), a removal case, that plaintiff may not amend the complaint after an improper removal to state a separable controversy appears to differ from the general rule in original jurisdiction cases that a complaint may be amended to confer jurisdiction initially absent.

developments in a case were relevant to whether it should be remanded or dismissed, we conclude that § 1447(c) does not preclude examination of post-removal developments to determine whether jurisdiction has been lost. *Accord, Comstock v. Morgan,* 165 F.Supp. 798, 800 (W.D.Mo. 1958).[7]

■ Several courts have observed with concern a divergence in results in cases concerning remand after removal,[8] *e.g. Brown v. Eastern States Corp.,* 181 F.2d 26, 28 (4th Cir.), *cert. denied,* 340 U.S. 864, 71 S.Ct. 88, 95 L.Ed. 631 (1950); *Jellison v. Krell,* 246 F. 509, 511–16 (E.D.Ky.1917). But this divergence does not indicate that there is a conflict of authority over the meaning of § 1447(c). Rather it is caused by the fact that some post-removal developments have jurisdictional impact and others do not. In recognizing a rule that § 1447(c) allows a court to consider post-removal changes we do not mean to say that every change that appears to affect jurisdiction in fact does. The specific change must be analyzed under general jurisdictional principles to determine whether it divests a court of its power to hear the case.[9]

C. Effect of post-removal developments

■ Drawing from precedents in analogous situations, we conclude that elimination of HHS from this suit did not deprive the district court of power to entertain the remaining state law controversy. A similar case is *Brelsford v. Whitney Trust & Sav.* *Bank,* 69 F.2d 491, 492 (5th Cir. 1934). There the Fifth Circuit considered a case that was within the district court's original jurisdiction as a suit to foreclose a mortgage on property on which the United States held a lien.[10] We decided that the district court retained jurisdiction even though the government's lien was paid off before the action was terminated. A second analogous precedent is *Texas Employers Ins. Ass'n v. Felt,* 150 F.2d 227, 230 (5th Cir. 1945), a suit removed to the district court under the old removal law as involving a separate removable controversy (two of the three defendants were of diverse citizenship). The jury rendered its verdict against all three defendants, but the judge entered judgment n. o. v. in favor of the two diverse defendants. We held that this elimination of the removable controversies did not deprive the court of power to enter judgment against the nondiverse defendant.

■ In addition to these specific precedents broader analysis supports our holding of retained jurisdiction. Section 1442(a)(1) authorizes removal of the entire case even though only one of its controversies might involve a federal officer or agency. *Fowler v. Southern Bell Tel. & Tel. Co.,* 343 F.2d 150, 152 (5th Cir. 1965). Thus § 1442(a)(1) creates a species of ancillary jurisdiction over the nonfederal elements of the case. In other instances of ancillary jurisdiction elimination of the "principal"

**7.** The difference of verbal tenses in old § 80 and § 1447(c) does not command a contrary result. *Merrimack,* 587 F.2d at 645–46. The legislative history of the 1948 revision is "uniformly clear that no changes of law or policy are to be presumed from changes of language in the revision unless an intent to make such changes is clearly expressed." *Fourco Glass Co. v. Transmirra Prod's Corp.,* 353 U.S. 222, 227, 77 S.Ct. 787, 790, 1 L.Ed.2d 786 (1957). There is a difference of opinion on this issue, however. *Compare Brown v. Eastern States Corp.,* 181 F.2d 26, 28 (4th Cir.), *cert. denied,* 340 U.S. 864, 71 S.Ct. 88, 95 L.Ed. 631 (1950) (language of § 1447(c) instructs to look only to time of removal).

**8.** *Compare Merrimack,* 587 F.2d at 646 ("The Fifth Circuit has squarely rejected the argu-

ment that 'the right to remove depends upon the case disclosed by the pleadings when the petition for removal is filed . . . .' "), *with Carter,* 618 F.2d at 1101 (also 5th Cir.) ("It is a fundamental principle of law that whether subject matter jurisdiction exists [over a removed case] is a question answered by looking to the complaint as it existed at the time the petition for removal was filed.").

**9.** Here there is no precise analog from original jurisdiction cases since the presence of a federal defendant is generally not sufficient to confer original subject matter jurisdiction.

**10.** *See* 28 U.S.C. § 2410. Such cases are also removable. *Id.* at § 1444.

controversy [11] in a case does not deprive the court of power to dispose of the ancillary matters even though the court would not have had jurisdiction over these matters but for ancillarity.[12] For instance, the law is uniform that ancillary counterclaims may be considered after the main claim has been disposed of. *Harris v. Steinem*, 571 F.2d 119, 122 n.8 (2d Cir. 1978); *Pipeliners Local 798 v. Ellerd*, 503 F.2d 1193 (10th Cir. 1974); *Koufakis v. Carvel*, 425 F.2d 892, 900 (2d Cir. 1970); 6 Wright & Miller, *Federal Practice and Procedure* § 1414, at 78 (1971). *See Moore v. New York Cotton Exchange*, 270 U.S. 593, 607–09, 46 S.Ct. 367, 370–71, 70 L.Ed. 750 (1926); *Kirby v. American Soda Fountain Co.*, 194 U.S. 141, 24 S.Ct. 619, 48 L.Ed. 911 (1904). This doctrine applies here, as well. *Cf.* 3 J. Moore, *Federal Practice*, ¶ 13.36, at 928–29 (applies by analogy to ancillary cross claims).

Policy favors the retention of jurisdiction. A federal officer may be eliminated from a case at any time, even after trial, *see, e.g.*, discussion of *Texas Employers Ins. Ass'n*, *supra*. If his falling out of the case were held to require an automatic remand waste of judicial resources might result.

Finally, all other courts that have considered this issue have reached the same conclusion—that elimination of the federal officer from a removed case does not oust the district court of jurisdiction (except where there was no personal jurisdiction over the officer). *Watkins v. Grover*, 508 F.2d 920, 921 (9th Cir. 1975); *Murphy v. Kodz*, 351 F.2d 163, 167 (9th Cir. 1965); *Peroff v. Manuel*, 421 F.Supp. 570, 576 (D.D.C.1976); *Herman Andrae Electrical Co. v. Freiberg*, 332 F.Supp. 858, 859–60 (E.D.Wis.1971).[13]

## D. Discretionary Remand

[15–17] Latin American and Pedraja urge that even if the district court had jurisdiction to consider this case after the dismissal as to HHS, it nevertheless had discretion to remand, *see Murphy v. Kodz*, 351 F.2d 163 (9th Cir. 1965), and should have done so. We decline to follow the lead of the Ninth Circuit in *Murphy v. Kodz* where the court found a general discretion to remand cases to the state courts. The clear import of *Thermtron Products Inc. v. Hermandsdorfer*, 423 U.S. 336, 96 S.Ct. 584, 46 L.Ed.2d 542 (1976) (district court may not remand because of its crowded docket), counsels against this reasoning. *Thermtron* does not hold, however, that there can never be an element of discretion in the remand process.[14] Rather, discretion to re-

---

**11.** This term is used in its technical jurisdictional sense to mean the controversy that supports jurisdiction over the other controversies in the case. In its common sense, of course, the principal controversy here is IMFC's claim against Latin American and not the third-party claim.

**12.** The exception to this rule is that if the principal claim is dismissed because there was never jurisdiction over it, then the ancillary claim must likewise be dismissed as never having been within the court's jurisdiction. As discussed in subsection A, *supra*, there was initial removal jurisdiction; therefore, this exception does not apply here.

**13.** Contrary authority might be found in *Texas Transportation Co. v. Seeligson*, 122 U.S. 519, 7 S.Ct. 1261, 30 L.Ed. 1150 (1887), which ordered remand of a case after the separate controversy that was the basis for removal was voluntarily dismissed before trial. This case is persuasive only by analogy and we decline to draw from it, as did the court in *Comstock*, 165 F.Supp. at 802, the general rule that whenever the party who supplied the basis for removal falls out of a case it must be remanded. *Seeligson* predates the modern concepts of ancillary and pendent jurisdiction on which we rely here and it is "difficult to reconcile" with subsequent Supreme Court authority, *Jellison v. Krell Piano Co.*, 246 F. 509, 515 (E.D.Ky.1917); *accord, Kline v. Murray*, 7 F.2d 404, 405 (D.Mont.1925). Other courts have declined to extend *Seeligson; Jellison; Kline; see Texas Employers Ins. Ass'n v. Felt*, 150 F.2d 227 (5th Cir. 1945), and its authority appears to have been limited to its general facts. Finally, the specific holding of *Seeligson* was nullified by the 1948 revision. *See* 28 U.S.C. § 1441(c) (remand is now discretionary).

**14.** We reject the contrary implication from the dictum in *Merrimack*, 587 F.2d at n.8. We agree with the discussion there only to the extent that § 1447(c) itself does not confer discretion to remand (in particular through the use of the term "improvident.") We reserve for decision when the issue is squarely presented whether a district court may allow joinder of a nondiverse party who is not indispensable even though such joinder may result in remand.

mand is not prohibited by § 1447(c) or *Thermtron* if that discretion is based on clearly articulated authority. For instance, § 1441(c), the separate claim removal provision, expressly allows discretionary remand of cases removed under it. *E.g., Rotermund v. U.S. Steel Corp.*, 346 F.Supp. 69, 76 (E.D.Mo.1972), *aff'd on other grounds*, 474 F.2d 1139 (8th Cir. 1973). Also, if a case is removed as one within pendent jurisdiction, the discretionary element that inheres in that doctrine allows remand of nonfederal issues. *See Hazel Bishop, Inc. v. Perfemme, Inc.*, 314 F.2d 399, 403–04 (2d Cir. 1963). A third example of a possible source for discretionary remand is the abstention doctrine. *See Naylor v. Chase & McGrath, Inc.*, 585 F.2d 557, 561–65 (2d Cir. 1978).

 Because § 1441(c), pendent jurisdiction, and abstention are not involved in this case, they cannot serve as authority for a discretionary remand. Instead, we find independent authority for a discretion to remand from the nature of the ancillary jurisdiction created by § 1442(a)(1). As we have discussed, the district court's power to consider the nonfederal aspects of this case results from the ancillary jurisdiction created by the authority in § 1442(a)(1) to remove the entire action. In other instances of ancillary jurisdiction, where the principal controversy is eliminated early in the proceedings, although power exists to entertain the ancillary claim, exercise of this power is discretionary. *National Research Bureau, Inc. v. Bartholomew*, 482 F.2d 386, 388–89 (3rd Cir. 1973) (dictum); *U. S. v. Gregor J. Schaefer Sons, Inc.*, 272 F.Supp. 962, 964 (E.D.N.Y.1967); 3 J. Moore, *Federal Practice* ¶ 13.15[1], at 382 and ¶ 13.36 at 929 (1981); 6 Wright & Miller, *Federal Practice and Procedure* § 1414, at 79 (1971). These authorities look to the closely analogous and intertwined doctrine of pendent jurisdiction under which it is discretionary whether to entertain the nonfederal claim once the federal claim has dropped out. *See Rosado v. Wyman*, 397 U.S. 397, 404–05, 90 S.Ct. 1207, 1213–14, 25 L.Ed.2d 442 (1970); *In re Carter*, 618 F.2d at 1104–05. These precedents are persuasive here, and we hold that § 1442(a)(1), through its creation of an an-

cillary jurisdiction, confers discretion on the district court to decline to exercise continued jurisdiction over IMFC's claim once HHS dropped out of the case. Once this discretion to decline jurisdiction is exercised, the proper procedure is to remand the case under § 1447(c), for at this point the case becomes one "removed improvidently and without jurisdiction."

 It is not necessary for us to consider whether the district court abused its discretion in not remanding this case, for Latin American or Pedraja never requested remand until after the court ruled against them on the summary judgment motion. While a defect in subject matter jurisdiction in the sense of power to hear the case cannot be waived, where the issue is the court's discretion in exercising its jurisdiction a litigant may not entrap the court by awaiting the outcome of dispositive motions and then asking that they be vacated. *Accord, Murphy v. Kodz*, 351 F.2d at 168. But, because we reverse the court's order in part and remand to it for further proceedings, defendants should be permitted to request of the district court that any further proceedings be remanded. The district court then would be under a duty to assess the propriety of its continued exercise of jurisdiction. *Cf. United Mine Workers v. Gibbs*, 383 U.S. 715, 727, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966) (the propriety of pendent jurisdiction "remains open throughout the litigation").

### E. Recapitulation

To summarize our holding on the jurisdictional issue, it was initially correct to remove this case although HHS was sued as a third-party defendant and the third-party complaint was ultimately dismissed because of a failure to exhaust administrative remedies. Post-removal developments in a removed case may be considered, but precedents vary as to which developments require remand. The more analogous precedents instruct that the district court retained power to hear this case. However, since its jurisdiction was a residual ancillary

one, the district court has discretion to decline jurisdiction and remand the case. Because the motion to remand was not timely made, we need not decide whether this discretion was exercised properly.

## II. *Summary judgment*

 The district court entered summary judgment in favor of plaintiff IMFC on all issues. We hold that this was incorrect.

IMFC's barebones motion for summary judgment is fleshed out by its statement of material facts as to which there is no genuine issue to be tried (filed with the district court under local practice). IMFC asserts that the material facts with respect to which there is no genuine issue include these:

—that IMFC and Latin American entered into a "purchase agreement" (attached to the statement of facts).

—that Latin American sold to IMFC, and IMFC purchased, accounts receivable of Latin American.

—that pursuant to the agreement IMFC furnished various services to Latin American.

A complex series of calculations are set out at length in the statement of material facts. The effect of the calculations is this: IMFC has added to the amount of receivables transferred to it and collected by it another item called "unmatched receivables collected." [15] From the total of collections of these two categories of receivables IMFC has deducted what it has paid to Latin American, which would leave IMFC owing Latin American $77,000 plus. Against this IMFC has set up obligations allegedly due to it from Latin American consisting of allegedly uncollectable receivables that, under the agreement, Latin American is obligated to repurchase, and a fee of $84,000 plus for services furnished by IMFC to Latin American. These calculations produce a net allegedly due from Latin American to IMFC of $151,000 plus. Thus, IMFC's claim is for uncollected receivables due to be repurchased by Latin American pursuant to the purchase agreement, plus a fee for services allegedly furnished by IMFC, reduced by a balance due from IMFC to Latin American.

First, with respect to the nature of the agreement and IMFC's claim arising out of the obligation to repurchase: IMFC alleged in its complaint that Latin American had sold to it, and it had purchased from Latin American, receivables pursuant to the terms of the agreement. IMFC sued on the undertaking of Latin American under this agreement to repurchase accounts purchased by it but disputed or uncollectable.[16] In its order granting summary judgment the district court accepted IMFC's characterization of the undertaking and found that the parties "had entered into an agreement dated July 6, 1976 whereby Plaintiff was able to purchase accounts receivable at a 10% discount." Latin American had, however, filed an opposition to summary judgment which, though sketchy, asserted that the agreement, rather than being for purchase-sale-repurchase created a lender-borrower relationship with usurious rates of interest in violation of Florida law. We need not address the arguments of the parties concerning the burden of each on summary judgment where it is claimed that a loan is usurious. IMFC's claim was predicated upon Latin American's failure to repurchase allegedly uncollectable accounts under the repurchase prong of a written purchase-sale-repurchase agreement. Latin American contended that the agreement between the parties was one of lender and borrower. The district court accepted IMFC's analysis. We have examined the agreement, and we are unable to say that on its face it unambiguously creates a purchase-sale-repurchase agreement and that the overall arrangement is not a lender-borrower arrangement. Neither party offered any evidentiary materials setting forth the

**15.** There is no explanation of this term or of how this item arose. The agreement does not refer to "unmatched receivables."

**16.** Apart from its claim for services, discussed below, IMFC does not claim to be entitled to recover on any basis other than sale and purchase of accounts, followed by breach of an obligation to repurchase.

facts and circumstances surrounding the negotiation of the transaction and tending to lay this dispute to rest. The services that IMFC claims that it furnished to Latin American described below and allegedly entitling IMFC to an $84,000 fee, are not, at least facially, services that would normally be supplied by a purchaser of accounts to a seller of accounts. In these circumstances summary judgment on the claim based upon obligation to repurchase was entered too soon.

In addition IMFC sought to prove the amount due it under the agreement by a brief affidavit of IMFC's president who stated that he had examined the books and records of IMFC relating to the transactions of Latin American and that the records revealed the figures that we have described in the series of calculations. This was not sufficient to prove the net amount due after application of the various debits and credits.[17]

With respect to the claim for a fee for services of $84,000 plus, the complaint alleges that the services were rendered by IMFC "in accordance with the terms of the agreement." The statement of material facts sets out that, pursuant to the agreement, IMFC performed numerous services to Latin American including preparing computer reports, management consulting services, analysis of cash, accounts receivable, bookkeeping and control services, and a variety of other services, all resulting in a fee due to IMFC for services of $84,000 plus. The agreement makes no reference to services. Latin American's opposition to summary judgment says that the only service furnished by IMFC to Latin American was "the financing of accounts receivable." Summary judgment for IMFC on this claim was incorrect.

The final issue reached on summary judgment was the liability of Pedraja, Latin American's medical director, as personal guarantor. Because summary judgment for IMFC on the two aspects of its principal claim must be reversed, the summary judgment against Pedraja falls as well.

REVERSED.

---

17. As we have pointed out above, nothing explains the reference to "unmatched receivables."