778 F.2d 267
 Michael MOSES, et al., Plaintiffs-Appellants-Cross Appellees,
v.
BANCO MORTGAGE CO., et al., Defendants-Appellees,
and
Northwest Mortgage, Inc., f/k/a Banco Mortgage Company,
Defendant-Appellee-Cross Appellant.
In re NORWEST MORTGAGE, INC., f/k/a Banco Mortgage Company
and Jordan B. Kirshenbaum, Petitioners.
 Nos. 84-1750, 85-1207.
 United States Court of Appeals,
Fifth Circuit.
 Dec. 16, 1985.
 
 Calhoun, Spillman & Stacy, Mark Alan Calhoun, William A. Smith, Dallas, Tex., for plaintiffs-appellants-cross-appellees.
 Harris E. Kerr, Midland, Tex., for J. Kirshenbaum.
 James A. Rolfe, U.S. Atty., Charles Ory, Asst. U.S. Atty., Dallas, Tex., for U.S.A. Dept. of Housing & Urban Development.
 Priscilla Perry, Boyd & Dubose, Samuel L. Boyd, Richard A. Valdes, Robert M. Hill, Charles Ory, Mark Alan Calhoun, William A. Smith, Dallas, Tex., Harris Kerr, Midland, Tex., for appellees.
 Appeals from the United States District Court for the Northern District of Texas.
 Before GOLDBERG, E. GRADY JOLLY and PATRICK E. HIGGINBOTHAM, Circuit Judges.
 On Petition for Writ of Mandamus to the United States
 District Court for the Northern District of Texas
 E. GRADY JOLLY, Circuit Judge.
 
 
 1
 In this case the appellants assert a rather odd amalgam of causes of action, among other things claiming standing to challenge HUD's interpretation of its own regulation governing qualification of bidders on HUD mortgages. The appellants assert that the alleged improper interpretation of this regulation by HUD allowed a competing party, also a defendant, to become the owner of the mortgage. The appellants seek to "estop" HUD from asserting in this case that it applied the subject regulation correctly. No damages or other relief is sought against HUD. Because the appellants do not come within the zone of interest to be protected by the regulation they challenge, we hold that they lack standing to challenge HUD's interpretation of that regulation and reinstate the district court's dismissal of all remaining claims without prejudice.
 
 
 2
 * A.
 
 
 3
 This action arises from a mortgage auction held July 21, 1982, by the United States Department of Housing and Urban Development (HUD). The mortgage covered a 160-unit apartment complex, known as Hampton Place I and II, in DeSoto, Texas. In 1978, the defendant Kirshenbaum sold the property to the plaintiffs, Michael Moses, Albert A. Rainone, Bobby Jean Rainone, Bart C. Rainone and Daneen M. Rainone, (collectively Moses), subject to the HUD mortgage, and, in connection with the sale, retained a second lien on the premises for a portion of the purchase price. Moses, the owner, attempted to purchase the mortgage at the HUD sealed-bid auction, but was outbid by Banco Mortgage (Banco) and HUD awarded the bid to Banco.
 
 
 4
 After the auction Moses discovered that Banco had entered an agreement on July 14, 1982, to sell the mortgage to a group of investors (the Syndicate)[1] if Banco was successful at the auction. After obtaining the bid, Banco and the Syndicate realized that their agreement was unenforceable or invalid. Banco and the Syndicate then executed a one-year option in favor of Kirshenbaum to purchase the mortgage. This option was extended an additional year in 1983. The option has not been exercised and Banco remains the owner of the mortgage on Hampton Place I and II.
 
 
 5
 Moses challenges the award of the bid to Banco, asserting that the arrangement between Banco, the Syndicate and Kirshenbaum violated HUD's auction guidelines that limited bidders to FHA-approved mortgages and owners of the property. These guidelines were:FHA-approved mortgagees may submit a bid on any mortgage listed in the offering of Project Mortgages. Other individuals or business entities may bid only if they are shown in HUD's records as being the most recent HUD-FHA approved mortgagor of a property which is the underlying security for a mortgage listed in Attachment 8. Such individuals or entities may bid only on the mortgages encumbering their projects and the bids may be submitted in the name of the mortgagor of record--i.e., the name of the most recent HUD-FHA approved mortgagor. Such mortgagors must have received previous participation (Form 2530) clearance from HUD to own the particular project and must not currently be debarred or suspended under 25 CFR Part 24.
 
 
 6
 Moses argues that although Banco was an FHA-approved mortgagee, it was merely a front for the Syndicate and Kirshenbaum who were not eligible bidders.
 
 
 7
 Moses also alleges other causes of action arising from the July 21 auction. As damages, Moses asserts that the loss of the bid on the mortgage prevented a resale of the property to Gulf Western that would have provided Moses a profit of $1 million.
 
 B.
 
 8
 On August 4, 1982, Moses filed suit in state court seeking to prevent Banco and Kirshenbaum from taking title to the mortgage. A temporary restraining order was granted, and a hearing on a temporary injunction was set for August 13. On August 12, however, Banco and Kirshenbaum filed a petition for removal, and the case was removed to federal court. Thereafter, Banco and Kirshenbaum filed motions to dismiss, seeking, inter alia, joinder of HUD as an indispensible party. On September 22, 1982, the complaint was voluntarily amended to add HUD as a party.
 
 
 9
 The amended complaint asserts six causes of action. Count I states that the auction was conducted in violation of HUD regulations, announcements and guidelines, and Banco's bid should be declared void. Court II asserts that HUD should be estopped from contending in this action that, under its regulations, Banco could bid for the mortgage and sell that mortgage to the Syndicate and Kirshenbaum. Count III asserts that Kirshenbaum breached his fiduciary duty allegedly owed Moses by using information gained from the relationship between them. Count IV states that Banco participated in and aided Kirshenbaum in breaching his alleged fiduciary duty. Count V states that Kirshenbaum willfully interfered with the contractual and business relationship of Moses. Count VI states that Banco entered into a civil conspiracy with Kirshenbaum with a purpose of interfering with Moses' contractual and business relationships.
 
 
 10
 On April 2, 1984, the district court granted partial summary judgment in favor of Banco and Kirshenbaum, holding that Banco's bid at the auction was not in violation of HUD's rules and regulations concerning eligible bidders. On June 27, 1984, the district court granted HUD partial summary judgment, finding that it was not estopped from asserting the theory that Banco's bid was proper. The remaining claims against Banco and Kirshenbaum alleged violations of state law, including, inter alia, breach of fiduciary duty, conspiracy, and tortious interference with contract. The district court concluded that it did not have subject matter jurisdiction over the state law claims and that the entire suit should be dismissed without prejudice to be refiled in state court. Upon post-judgment motion, however, the district court on August 6, 1984, remanded the remaining actions against Banco and Kirshenbaum to the state court from whence it was removed. Thereafter, Moses filed its notice of appeal with respect to the district court's orders of April 2, and June 27, 1984. Banco and Kirshenbaum cross-appeal the district court's decision not to exercise pendant jurisdiction over the remaining issues. In addition, Banco filed with this court a writ of mandamus conditional upon this court's rejection of its issues on cross-appeal. The writ requests that this court vacate the August 6 order remanding the remaining issues to state court and reinstate the June 27 order dismissing these claims without prejudice.
 
 II
 
 11
 This court must first determine whether Moses has standing to pursue his causes of action based on the application of the HUD regulation. Without deciding this issue, the district court assumed that Moses had standing. Because we conclude that Moses lacked the required standing to assert Counts I and II of his complaint, we dismiss that part of the action. Valley Forge Christian College v. Americans United for Separation of Church and State, Inc., 454 U.S. 464, 102 S.Ct. 752, 70 L.Ed.2d 700 (1982). In addition, because we reject Banco's and Kirshenbaum's issues on cross-appeal, we must rule on the writ of mandamus. We find that the writ has merit, grant the writ, and reinstate the district court's dismissal without prejudice of the remaining counts.
 
 III
 A.
 
 12
 Moses seeks to void the award of the mortgage bid to Banco, contending that Banco failed to satisfy the HUD regulations specifying who was eligible to bid at the July 21, 1982 auction. In asserting his standing to sue on these grounds, Moses argues that a party has standing to invoke judicial review of a government procurement decision if it demonstrates (1) injury in fact and (2) an interest arguably within the zone of interests to be regulated. Kinnett Dairies, Inc. v. Farrow, 580 F.2d 1260, 1265 (5th Cir.1978). The appellees accept this two-part test as controlling in the instant case. It is important to note, however, that this is not a case in which the government has made a procurement decision; instead the government has sold, not purchased, a good. As a result, prior decisions of this court that hold that a disappointed bidder for government contracts has standing to invoke judicial review are not precedent for this case. Nonetheless, we hold that the two-part case adopted in such cases is appropriate to the determination of Moses' standing before us.
 
 
 13
 Moses asserts that his failure to purchase the mortgage from HUD caused him injury in fact. While the appellees have contested this assertion, we find that because he lost his bid to own the mortgage, Moses did indeed lose the opportunity to sell the mortgage at a substantial profit. Thus, Moses has satisfied the first part of the standing test.
 
 
 14
 The dispute here is whether Moses can show that he is "arguably within the zone of interests to be protected or regulated." A party will fall within the zone of interests if he is a member of a class of persons who was intended to be benefited by the statute or regulation. Association of Data Processing Service Organizations, Inc. v. Camp, 397 U.S. 150, 153, 90 S.Ct. 827, 830, 25 L.Ed.2d 184 (1970). Conversely, parties who receive only unintended or incidental benefits from statutes or regulations are outside the zone of interests to be protected, and thus lack standing to sue. We hold that neither the Federal Housing Act nor the HUD regulation was intended directly to benefit either owners of low income housing projects or parties bidding at the HUD mortgage auction. Since any benefit that Moses may have received as a result of the statute or regulation was unintentional or incidental, we hold that Moses lacks standing to bring Counts I and II of his complaint.
 
 B.
 
 15
 Moses asserts that "their interests as owners of housing units which are designed for low-income persons is certainly within the zone of interest to be regulated by the United States Housing Act of 1937." Moses has failed to convince us. Congress has clearly stated that the intention of the law is to provide housing for low-income persons. The statute states:
 
 
 16
 It is the policy of the United States to promote the general welfare of the Nation by employing its funds and credit, ... to assist the several states ... to remedy the accute shortage of decent, safe and sanitary dwellings for families of low income....
 
 
 17
 42 U.S.C. 1437.
 
 
 18
 Case law has consistently confirmed this stated purpose. In United States v. Neustadt, 366 U.S. 696, 81 S.Ct. 1294, 6 L.Ed.2d 614 (1961), the Supreme Court carefully examined the legislative history of the National Housing Act before concluding that "there is no legal relationship between the FHA and the individual mortgagor." Id. 81 S.Ct. at 1301 (quoting H.R.Rep. No. 2271, 83d Cong., 2d Sess. 66-67 (1954)). The "fundamental design" of the National Housing Act is to create a system of mortgage repayment insurance. Neustadt 81 S.Ct. at 1301. There is no indication that owners of low income housing units fall within the zone of interests to be protected. See Roberts v. Cameron-Brown Co., 556 F.2d 356, 360 (5th Cir.1977); Baker v. Northland Mortgage Co., 344 F.Supp. 1385, 1386 (N.D.Ill.1972) (court held that mortgagor lacked standing to sue mortgagee under National Housing Act and regulations promulgated thereunder, because the statute and regulations "deal only with relations between the mortgagee and the government, and give mortgagors no claim to a duty owed nor a remedy.")
 
 
 19
 In his reply brief, Moses modified his argument to state that the
 
 
 20
 Housing Act of 1937 seeks to provide decent, safe and sanitary dwellings for low-income families and, in order to meet such goal, ha[s] offered incentives to investors to provide such housing. Clearly, the interest of investors to provide such housing is within the zone of interests to be protected. If those incentives are abolished, investors no longer have such incentives and a concomitant decline in such housing will result.
 
 
 21
 Again we are unpersuaded. As the Act and the cases make clear, the intended beneficiaries of the legislation are low-income families who require housing, and it is those classes of persons who fall within the zone of interest sought to be protected by the statute's broad purposes. If investors, for example, are to fall within the zone of protection of any provision of the statute, it must be specifically found that they are intended beneficiaries of the particular statute. Here, the appellants rely on no special provision of the statute. Rather, the specific "interest" as investors that the appellants claim, is the interest to bid on HUD mortgages. HUD mortgages, however, are only methods of providing incentives to investors so that the goal of the Housing Act can be attained. Investors who profit from these mortgages are incidental beneficiaries, and as a class of persons who only incidentally benefit from the statute, they are not within the zone of interest to be protected by the statute. Standing to challenge the bidding qualification regulation simply cannot be extended to such indirect and incidental beneficiaries of the Act.
 
 
 22
 Finally, Moses does not contend, and we do not find, that he specifically comes within the zone of interests to be regulated by the HUD restriction of the parties eligible to bid on the mortgage. The purpose of restricting eligibility for bidders was not to create an "incentive," as Moses implies, but rather to allow HUD to exercise control over the bidders. Ms. Hinton, the coordinator of the mortgage sale program for HUD, testified that restricting the eligibility of bidders allows HUD to remove bidders from the approved list for future auctions if they fail to perform their current or past obligations to HUD. Thus, any benefits that Moses received from the HUD regulation are unintended or incidental to the purpose of the regulation. Moses fails to come within the zone of interests to be protected by the regulation.[2]
 
 
 23
 We conclude, therefore, that Moses lacks standing to sue under the National Housing Act or the HUD regulation restricting the eligibility of bidders. As a result of Moses' lack of standing to challenge the provisions of HUD's regulations or actions, this court finds that the district court properly dismissed Counts I and II of Moses' complaint.
 
 IV
 
 24
 We now turn to address the question raised on cross-appeal of whether the district court properly dismissed the remaining causes of action for lack of subject matter jurisdiction. After HUD is dismissed from this action, a federal court lacks subject matter jurisdiction under 28 U.S.C. Secs. 1331, 1332, 1346 because the remaining causes of action assert only state law claims. Moreover, complete diversity jurisdiction is lacking in this action since both Moses and the appellees are Texans. Thus, the only basis for jurisdiction at this point is pendent jurisdiction.
 
 
 25
 The district court's discussion on this point is illuminating.
 
 
 26
 The doctrine of pendent jurisdiction allows a court to hear and decide claims over which no independent jurisdiction exists when those claims derive from a "common nucleus of operative fact" giving rise to a claim over which a court does have jurisdiction. See United Mine Workers of America v. Gibbs, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). Although there is some dispute as to whether a court must dismiss pendent state claims when the federal claim is dismissed prior to trial, see cases cited in Wright, Miller & Cooper, Federal Practice and Procedure Sec. 3367 n. 34, 35 (1975), the Fifth Circuit recently espoused the following position: "[i]t is well-settled that the federal district court has the power to hear pendent state claims even though it has disposed of the federal claim that originally invoked its jurisdiction." Breen v. Centex Corp., 695 F.2d 907, 914 (5th Cir.1983) (emphasis in original).
 
 
 27
 A district court has discretion in determining whether to exercise its pendent jurisdiction. Hagans v. Levine, 415 U.S. 528, 545, 94 S.Ct. 1372, 1383, 39 L.Ed.2d 577 (1974). Since the instant case has not yet proceeded to a trial on the merits in federal court, we hold that the district court did not abuse its discretion in deciding to dismiss the action from federal court.
 
 V
 
 28
 As we have earlier noted, on August 6 the district court revised its June 27 order dismissing the remaining claims without prejudice, and entered an order under Rule 60 remanding the remaining claims to the state court where they had been filed originally. Banco has filed a petition for a writ of mandamus conditional upon our rejection of its issues on cross-appeal. This petition alleges that the district court erred in entering the August 6 order. As we have rejected Banco's request that we reverse the district court's refusal to exercise its pendent jurisdiction over counts III-VI of Moses' complaint, we now turn our attention to the issue raised in the petition for writ of mandamus.
 
 
 29
 On April 2, 1984, the district court entered an order of partial summary judgment for Banco on count I of Moses' complaint. On June 27, 1984, the district court entered an order granting partial summary judgment for the defendants on count II, dismissing HUD as a party to this action, and dismissing the remaining counts of Moses' action without prejudice to be refiled in state court. On July 10, Moses filed a motion for reconsideration, without specifying the procedural source for this motion, requesting the court to vacate that portion of the June 27 order which dismissed the case without prejudice as to Banco and Kirshenbaum and to remand the remaining counts to state court. On July 23, Moses submitted a motion for relief from the June 27 judgment, again requesting the court to vacate that portion of the June 27 order that dismissed the case without prejudice, and requesting that the action be remanded to state court, contending that the district court had jurisdiction to entertain the motion under Federal Rule of Civil Procedure 60(a) and 60(b)(6). Both of these motions were opposed by the defendants.
 
 
 30
 On August 6, 1984, the district court determined that Moses' July 10 motion for reconsideration was based either on Rule 52 or Rule 59, both of which required the motion to be served not later than ten days after the entry of judgment. As the motion for reconsideration was filed after the ten-day period had elapsed, the district court dismissed the motion for reconsideration. The district court granted the motion for relief from the judgment filed under Rule 60, however, concluding that Fed.R.Civ.P. 60(b) provided the basis of jurisdiction because the court had previously erred in dismissing the remaining claims. The court stated that the only proper disposition of the action was remand because the action had been "removed improvidently and without jurisdiction." Since the district court had dismissed the action instead of remanding, the court amended its June 27 order and remanded the remaining claims to the state court.
 
 
 31
 Banco contends that the district court erred in entering its August 6 order altering or modifying its June 27 order, and we agree. The district court properly concluded that Moses' motion could not be considered under either Rules 52 or 59 since both the motions for reconsideration and relief from the judgment were filed after the ten-day limit had passed. As the ten-day limit determines the court's jurisdiction, the district court was without jurisdiction to entertain these motions and properly dismissed them. The court, however, erred in concluding that it could modify the June 27 order under Rule 60(b)(1) because it had dismissed the action without prejudice instead of remanding the action to the state court. In fact, on June 27, the district court had the option of retaining the remaining claims under its pendent jurisdiction, remanding the action to the state court, or dismissing the action without prejudice to be refiled in state court. Thus, while the court could have remanded the action to the state court, it did not err in dismissing the action without prejudice. Since Rule 60(b)(1) only authorizes a court to correct a mistake, and none of the other categories delineated in Rule 60(b) is claimed to be applicable, and the district court did not make a mistake in dismissing the action, the district court erred in relying on Rule 60(b) to amend its June 27 judgment. As a result, the district court erred in amending the June 27 judgment, and the August 6 order is null and void.
 
 
 32
 Although this court lacks jurisdiction to review a district court's order of remand entered under 28 U.S.C. Sec. 1447, the Supreme Court has stated that a district court's remand decision is reviewable when the remand is based on considerations other than the fact that the removal to the federal court was improvident and without jurisdiction. Thermtron Products, Inc. v. Hermansdorfer, 423 U.S. 336, 343-44, 96 S.Ct. 584, 589-90, 46 L.Ed.2d 54 (1976). In that case, the district court remanded an action to state court because the district court's docket was full and thus precluded the court from hearing the action in the near future. On writ of mandamus to the Sixth Circuit, the court upheld the remand order and denied the writ, concluding that the remand decision was within the discretion of the district court and that 28 U.S.C. Sec. 1447 precluded appellate review. While acknowledging that an appellate court lacked authority to review a remand order properly entered under 28 U.S.C. Sec. 1447(c), the Supreme Court found that an appellate court had jurisdiction to review a remand decision that is not properly based on 28 U.S.C. Sec. 1447(c). In addition the Court held that "because an order remanding a removed action does not represent a final judgment reviewable by appeal" the proper remedy is by mandamus to compel action and not by direct appeal. Id. 96 S.Ct. at 594.
 
 
 33
 In the instant case, the district court purports to be remanding the action under 28 U.S.C. Sec. 1447(c) because, in the light of the subsequent dismissal of HUD as a party to the action, the case was "improvidently and without jurisdiction" removed to the federal court. While remanding under section 1447 may have been an option to the district court in its June 27 order, we need not reach this issue. The district court did not err in dismissing the action without prejudice on June 27 and thus was precluded from reopening this issue under Rule 60(b) of the Federal Rules of Civil Procedure. Because the district court erred in issuing its August 6 order under Rule 60, the substance of that order is not before us. As a result, we find that the writ of mandamus, which as the Supreme Court stated, is the proper means of bringing this issue before this court, concerns solely the propriety of the district court's action under Rule 60 and not the court's decision to remand the action under section 1447(c). Since the district court erred in entering its August 6 order, that order is void. It is therefore vacated and the June 27 order dismissing the action without prejudice to its being refiled in state court is reinstated.
 
 VI
 
 34
 For the reasons set forth in this opinion, Counts I and II are dismissed for lack of standing, and we affirm the district court's decision not to rule on the pendent claims. We grant the writ and vacate the district court's order of August 6, and reinstate the order of June 27 as entered.[3]
 
 
 35
 APPEAL DISMISSED AND WRIT GRANTED.
 
 
 
 [1]
 The Syndicate was composed of Salomon Brothers, Inc., Merrill, Lynch, White, Weld Capitol Market Group, Inc., and Huntoon, Paige Associates, Ltd
 
 
 [2]
 The National Housing Act does not contain an express right of action authorizing suits by private parties. Nonetheless, as was acknowledged at oral argument, Moses is requesting that this court imply a private right of action under the National Housing Act or the HUD regulation. Federal courts will not imply such private rights unless the statute reveals that Congress intended such an action to be privately enforceable. Blue Chip Stamps v. Manor Drug Stores, 421 U.S. 723, 95 S.Ct. 1917, 44 L.Ed.2d 539 (1975). In Cort v. Ash, 422 U.S. 66, 95 S.Ct. 2080, 2088, 45 L.Ed.2d 26 (1975), the Supreme Court set forth four factors to be considered in determining whether a private right of action should be implied
 The District of Columbia, First, Sixth and Ninth Circuits have held that the Housing Act and regulations promulgated thereunder do not satisfy the four-part Cort test, and thus have refused to create a right of action for private parties who wish to sue to enforce the statute or regulations promulgated thereunder. Shivers v. Landrieu, 674 F.2d 906 (D.C.Cir.1981); Falzarano v. United States, 607 F.2d 506 (1st Cir.1979); City of Rohnert Park v. Harris, 601 F.2d 1040, 1045 (9th Cir. B; A), cert. denied, 445 U.S. 961, 100 S.Ct. 1647, 64 L.Ed.2d 236 (1980); M.B. Guran Co., Inc. v. City of Akron, 546 F.2d 201 (6th Cir.1976). See also Roberts, supra (holding that violations of HUD handbook by HUD does not give rise to a private cause of action).
 As this question was not briefed by the parties in the instant action and only briefly mentioned in oral argument, we simply note, but do not decide, this issue.
 
 
 [3]
 Both parties have requested attorney's fees. Because we can find no reason to grant these motions for either party, the motions are denied