Robert R. SHELTON, et al., Plaintiffs,

v.

EXXON CORPORATION, et al., Defendants.

Civ. A. No. H–83–1575.

United States District Court, S.D. Texas, Houston Division.

Sept. 3, 1987.

Joseph D. Jamail, Jamail, Kolius & Mithoff and William Key Wilda, Joe H. Foy, and Charles G. King, III, Bracewell & Patterson, Houston, Tex., for plaintiffs.

Frank G. Harmon and William N. Blanton, III, Baker & Botts and Alfred H. Ebert, Jr., Andrews & Kurth, Houston, Tex., for defendants.

## MEMORANDUM OPINION
## AND ORDER

HITTNER, District Judge.

Pending before the Court are the parties' Motions for Reconsideration of the Court's July 28, 1987, oral orders (1) for realignment of the parties, and (2) of dismissal for lack of subject-matter jurisdiction. Since the July 28, 1987, hearing, all of the parties have forwarded correspondence to the Court encouraging a course of action, in whole or in part, different from the oral disposition made of this case on July 28, 1987. While the Court is reluctant to review its prior orders, the Court will construe all of the letters, attached materials, and filings made after July 28, 1987, as Motions for Reconsideration which will be considered and handled in this Order. Having considered these Motions for Reconsideration, the complete case file, the representations of counsel at the July 28, 1987, hearing in open court, and the applicable court rules and law, the Court is of the opinion that all of the Motions for Reconsideration should be, and hereby are, DENIED. Furthermore, the Court's oral orders (1) for realignment and (2) of dismissal for lack of subject-matter jurisdiction are AFFIRMED for the following reasons.

## STATEMENT OF THE CASE

Robert Shelton, his various corporate entities (Shelton Ranch Corp., Shelton Ranches, Inc., and Shelton Land and Cattle Company), W.E. Harwood Trust, and W.E. Harwood, Trustee [hereinafter referred to collectively as the Shelton Plaintiffs] filed their Original Petition in this case in state court in 1979. It was removed to federal court in 1983 by Defendant Exxon, after King Ranch was voluntarily dismissed by the Shelton Plaintiffs. The basic substance of the Shelton Plaintiffs' claims was originally made against essentially two Defendants, Exxon Corporation and King Ranch, Inc., as stated in Plaintiff's Original Petition in Cause No. 79–47541 filed in the 133rd District Court of Harris County, Texas. The Shelton Plaintiffs alleged then, and still allege, to be the holders of an undivided mineral interest, mineral royalty interest, and royalty interests in relation to land owned by the King Ranch.

As originally pleaded in state court, the Shelton Plaintiffs stated that "King Ranch, Inc., retained what may commonly be called all executive rights ... [and] by virtue of the retention of these executive rights the Defendant, King Ranch Inc., became obligated [to the Shelton Plaintiffs], and duty bound to exercise reasonable prudence in good faith to enforce the obligations of the leases [with] ... the lessee Exxon...." Plaintiffs' Original Petition at 3. As to Defendant Exxon, the Shelton Plaintiffs alleged a direct claim against Exxon for underpayment of royalties due to Exxon's failure "to market the gas produced from the King Ranch in such fashion as would net the owners of undivided mineral interest and mineral royalty interests, including your Plaintiffs, royalty commensurate with the true market value of such gas as defined by the contracts ... [and] to exercise either reasonable prudence or good faith in the manner in which it computed severance tax to reduce Plaintiffs' royalties by a sum not justified by the actual severance tax in fact paid by Exxon to the State of Texas knowing and realizing that the method ... would substantially diminish, the royalties...." Plaintiffs' Original Petition at 5.

Since the original state court petition was filed in 1979, the forum, allegations, parties, and claims have undergone an apparent metamorphosis through a long and convoluted procedural history. Within the first year of this suit, the two principal Defendants, King Ranch and Exxon, settled *all* claims for additional royalties on production through August 31, 1980. Because Exxon has continually contested the

Shelton Plaintiffs' right and/or power to maintain and prosecute this action on their own behalf, the June 5, 1980, settlement between King Ranch and Exxon was made without the participation and over the protest of the Shelton Plaintiffs. The Shelton Plaintiffs still maintain that the settlement of June 5, 1980, is not binding on them.

In addition to the Shelton Plaintiffs, whom King Ranch alleged to represent in the pre–1980 claims, King Ranch does represent itself and other individual parties who hold interests in King Ranch, Inc., and/or King Ranch Oil & Gas, Inc. These individuals, mineral and royalty owners, have been referred to as "Executive Rights Beneficiaries." They and the King Ranch entities [King Ranch, Inc., and King Ranch Oil & Gas, Inc. (KROG)] never initiated participation in this suit. In state court, King Ranch was named as a defendant and subsequently settled pre–1980 claims for itself, and all Executive Rights Beneficiaries, including the Shelton Plaintiffs.

After the June 5, 1980, settlement, King Ranch remained as a defendant in the state court case until February 9, 1983, at which time Plaintiffs' Fourth Amended Original Petition was filed indicating that the Plaintiffs voluntarily nonsuited the then defendants, King Ranch, Inc., and King Ranch Oil and Gas, Inc. Exxon Corporation remained the sole defendant and therefore sought removal of the case to the United States District Court for the Southern District of Texas, Houston Division, based upon this Court's original jurisdiction under diversity of citizenship,[1] exercisable via removal jurisdiction.[2] Exxon Corporation's Petition for Removal at 2.[3]

### PROCEDURAL HISTORY—POSTREMOVAL

In its Petition for Removal, Exxon Corporation asserted its right of removal

based upon the diversity of citizenship that existed then and still exists between the Shelton Plaintiffs, citizens of Texas, and Defendant Exxon Corporation, a business entity incorporated in New Jersey, with its principal place of business in New York. The Shelton Plaintiffs did not move to remand the case, at least not directly or initially. Within a few months of the removal, however, Defendant Exxon Corporation filed an opposed Motion to Join Additional Parties. Exxon sought to join two King Ranch entities, King Ranch, Inc., and King Ranch Oil and Gas, Inc., via Fed.R. Civ.P. 19(a), and to realign the King Ranch entities as Plaintiffs, citing for authority *Eikel v. States Marine Lines, Inc.*, 473 F.2d 959 (5th Cir.1973).[4]

The response and reply by the Shelton Plaintiffs sought to buttress and advocate their position that they had standing to sue Exxon directly and therefore the King Ranch was not needed. The Shelton Plaintiffs' opposition to joinder of the King Ranch, nonetheless, emphasized the antagonism between King Ranch and the Shelton Plaintiffs. "The [King] Ranch Interests have refused in the past to sue Exxon and [the Shelton] Plaintiffs know of no reason to believe they would not persist in their refusal to sue Exxon in the future. Their position has been antagonistic to that of Plaintiffs and continues to be at this time. To have them aligned with Plaintiffs would confuse the issues and create severe difficulties in the presentation of Plaintiffs' case." Plaintiffs' Response to Defendant's Motion to Join Additional Parties at 4. Additionally, in Plaintiffs' Reply Brief in Support of their Response to Exxon's Motion to Join Additional Parties (Plaintiffs' Reply), the Shelton Plaintiffs again state the true nature of the suit and the parties' real interest:

---

1. 28 U.S.C. § 1332.

2. 28 U.S.C. § 1441(a) & (b).

3. The Court notes that the complete state court file is not a part of this Court's record as is required by 28 U.S.C. § 1446(a). Filed with the Petition for Removal is only the Plaintiff's Original Petition.

4. In citing the *Eikel* case, Exxon acknowledges the inappropriateness of the "involuntary plaintiff" doctrine to this case, but nonetheless desires the same result via joinder and realignment.

Exxon's motivation for this motion is clear to Plaintiffs. Exxon wants to place a friendly figure on the other side of the docket. Certainly, Exxon's protestations about Ranch Interests' claim to exclusive powers to sue on behalf of these Plaintiffs sound hollow in view of the indifference of Ranch Interests toward Plaintiffs' rights. Although once defendants in this suit, Ranch Interests never asserted a cross-claim against Exxon and at this point have not made the slightest effort to intervene. Plaintiffs are indeed in a sorry state if they must depend upon so torpid a set of champions in this tournament.

Plaintiffs' Reply at 3.

By a prior order from a different Judge of this Court, the King Ranch entities were finally joined to the case pursuant to Rule 19. There was no finding at that time as to the applicability of section (a) or (b) of Rule 19. Impliedly, however, there was concern about the feasibility of joinder of these parties in that the Court asked for briefing as to the proper alignment of the parties. If made Defendants, as originally joined, the King Ranch entities, Texas corporations, would destroy complete diversity and the jurisdiction of this Court. This Judge does not agree with the prior order aligning the King Ranch entities as Plaintiffs. The order gives no reason(s) or finding(s) to support the joinder of the King Ranch entities as Plaintiffs except that the parties so agreed. Since it is with the alignment issue that both the joinder and jurisdiction issues are intertwined, this analysis shall start with the proper alignment of these parties.

Prior to the discussion on alignment, however, there is additional postremoval procedural history relevant to the subsequent analysis. Immediately after the order to join the King Ranch entities, but before the order on alignment, the Shelton Plaintiffs sought and received permission from the federal court to amend their "complaint" in order to assert claims against the King Ranch entities identical to those dropped in the voluntary nonsuit in state court. King Ranch responded with a Motion to Dismiss these claims for lack of diversity jurisdiction, citing *Owen Equipment & Erection Co. v. Kroger,* 437 U.S. 365, 98 S.Ct. 2396, 57 L.Ed.2d 274 (1978). The King Ranch's Motion to Dismiss presents the Court with exactly the choices to be made in Rule 19(b) joinder because the nondiverse Defendant destroys jurisdiction. Either the Court dismisses the claim between the nondiverse parties and proceeds without the nondiverse party, or the Court dismisses the case because it should not proceed without the nondiverse party. Additionally, the Court notes that the pleading which the Shelton Plaintiffs actually should have amended (because this is a removed case) is Plaintiff's Fourth Amended Petition, the last state court pleading by the Plaintiffs in which the King Ranch was dropped from the suit. This sequence of events points out the following issue before this Court: Can the parties work to create jurisdiction in a federal court?

## REALIGNMENT OF THE PARTIES

When party alignment relates to jurisdiction, as in this case, it is the duty of this Court and even an appeals court, sua sponte, to notice party alignment and apply proper realignment; that is, realignment determined according to "the principal purpose of the suit and the primary and controlling matter in dispute." *Lowe v. Ingalls Shipbuilding,* 723 F.2d 1173, 1178 (5th Cir.1984) (citing *Indemnity Ins. Co. of N. Am. v. The First Nat'l Bank at Winter Park, Florida,* 351 F.2d 519, 522 (5th Cir. 1965)). It is a "venerable principle that jurisdiction is established at the commencement of the action, and, once established, cannot be ousted by later events." *Reilly Mortg. Group Inc. v. Mount Vernon Sav. and Loan Ass'n,* 568 F.Supp. 1067, 1074 (E.D.Va.1983), citing e.g. *Mullen v. Torrance,* 9 Wheat (22 U.S.) 957, 6 L.Ed. 154 (1824). What this entails for a consideration of proper alignment in a diversity suit is that "the *facts* which form the basis for realignment must have been in existence at the time the action commenced." *American Motorists Ins. Co. v. Trane Co.,* 657 F.2d 146, 149 (7th Cir.1981) (emphasis added); *Scott v. Fancher,* 369 F.2d 842, 844

(5th Cir.1966). Equally as venerable a principle comes from the seminal Supreme Court case on party alignment:

[D]iversity jurisdiction cannot be conferred upon the federal courts by the parties' own determination of who are plaintiffs and who defendants. It is our duty, as it is that of the lower courts, to "look beyond the pleadings, and arrange the parties according to their sides in the dispute."

*City of Indianapolis v. Chase Nat'l Bank,* 314 U.S. 63, 69, 62 S.Ct. 15, 16–17, 86 L.Ed. 47 (1941) (citing in part *Dawson v. Columbia Ave. Sav. Fund,* 197 U.S. 178, 180, 25 S.Ct. 420, 421, 49 L.Ed. 713 (1905)).

Furthermore, there are two additional technical, procedural issues which must be meshed with the realignment issue: (1) This is a removed case, and (2) the removing Defendant, not the Plaintiff, sought joinder of a potentially nondiverse party after the case was successfully removed. Therefore, the question of proper party alignment arises in the context of Rule 19 joinder after the Court's jurisdiction was established via removal. Indeed, Defendant Exxon relies upon the *Eikel* case for the analysis process of how to join a party who refuses to initiate its participation in the suit. In this regard, as an exception to

the principal that the court's jurisdiction is determined at the commencement of the suit, realignment of the parties after Rule 19 joinder can destroy the court's diversity jurisdiction.[5] Essentially, the analysis is a three step process.[6] (1) Determine if under Rule 19(a) the King Ranch entities should be joined. (2) If joined, determine how the King Ranch entities should be aligned. (3) If proper alignment ousts the court of diversity jurisdiction, then pursuant to Rule 19(b), the Court must decide "in equity and good conscience" to either proceed without the King Ranch entities or dismiss the case for lack of subject matter jurisdiction.

## INITIAL JURISDICTION ESTABLISHED VIA REMOVAL

As discussed earlier in this opinion, this court's original jurisdiction to hear this alleged diversity case was invoked via removal jurisdiction. This is important to an understanding of why this Court is concerned about the initial creation of jurisdiction in federal court and of the proper disposition of the case; that is, remand or dismissal. If the principle that jurisdiction is established at the commencement of the suit was an ironclad rule, this case would still be in state court. But it is not.[7] If the

---

**5.** *Eikel,* 473 F.2d at 963 (citing several cases and two different treatises on federal procedure). In particular, "[a]s Wright and Miller state:

When a person is made a defendant because of his refusal to join as a plaintiff and jurisdiction is based on diversity of citizenship, the question whether he should be realigned as a plaintiff may arise. This is an important consideration inasmuch as under the requirement of complete diversity *realignment may oust the court of subject matter jurisdiction.*"

7 Fed., Prac. & Proc. 48 (emphasis added). Additionally, the *Eikel* case cites several cases that "support the dismissal of an otherwise properly brought federal diversity suit where joinder of a party under Rule 19 would destroy diversity." *See Eikel,* 473 F.2d at 963 n. 4, for recitation of applicable cases: *Haas v. Jefferson Nat'l Bank,* 442 F.2d 394 (5th Cir.1971), and *Schutten v. Shell Oil Co.,* 421 F.2d 869 (5th Cir.1970).

**6.** *See, e.g., Bonar, Inc. v. Schottland,* 631 F.Supp. 990, 998–1000 (E.D.Pa.1986).

**7.** Ordinarily, removal must take place within 30 days after receipt by the defendant of the initial

pleadings. 28 U.S.C. § 1446(b). In such a case, the removing defendant must allege that removal jurisdiction existed at the commencement of the action as well as at the time of removal. *Salem Trust Co. v. Manufacturers' Fin. Co.,* 264 U.S. 182, 189–90, 44 S.Ct. 266, 267, 68 L.Ed. 628, 631 (1924). An action not removable at inception may, however, become removable if the plaintiff voluntarily dismisses the nondiverse defendant and the action is removed within 30 days of the dismissal. 28 U.S.C. § 1446(b), which codified a long-standing case, *Powers v. Chesapeake & Ohio Ry. Co.,* 169 U.S. 92, 101, 18 S.Ct. 264, 267, 42 L.Ed. 673, 676 (1898).

This Court recognizes the parties' ability to remove via the *Powers* exception. The Court further notes, however, the Fifth Circuit case of *Weems v. Louis Dreyfus Corp.,* 380 F.2d 545 (5th Cir.1967), in which this circuit adopts the voluntary-involuntary rule for removal based upon the codification of the *Powers* exception in 28 U.S.C. § 1446(b). *Weems* at 547–48. The voluntary-involuntary rule seems to include a requirement of finality. *Weems* at 546. Applying the *Weems'* decision to this case, this Court observes that although the Shelton Plaintiffs'

case were "removed improvidently and without jurisdiction," the Court would remand it to state court. 28 U.S.C. § 1447(c). But it will not, having considered the cases cited to this Court. First, fraudulent joinder is not relevant because the removing *Defendant* (Exxon), not the *Plaintiff* (Shelton Plaintiffs), destroyed this Court's jurisdiction by Rule 19 joinder of a nondiverse Defendant (King Ranch).[8] Additionally, the Court considered the cases presented by the Shelton Plaintiffs to support the proposition that the use of the remand statute, 28 U.S.C. § 1447(c), is not limited to situations where there was no jurisdiction at the time of removal. *In re Merrimack Mutual Fire Ins. Co.*, 587 F.2d 642, 645–46 (5th Cir.1978).[9]

This Court concludes that any applicability of and analysis relying on *Merrimack* must be viewed with several factors in mind. First, remand is generally not reviewable. 28 U.S.C. § 1446(d). Second, the *Merrimack* decision did not hinge on a review of the lower court's discretionary decision relating to the indispensable party. *Merrimack*, 587 F.2d at 649. Third, the Fifth Circuit has more recently and more directly addressed the discretionary issue in *Moses v. Banco Mortgage Co.*, 778 F.2d 267 (5th Cir.1985). The *Moses* opinion, in conjunction with the Supreme Court directives in *Thermtron Prod. Inc.*, makes clear that any rule of law to be derived from the appellate court's review of a district court's decision to remand or dismiss, in cases such as this one, is more contingent upon the actual decision made by the court in the case under review and the standard of review applied to that decision, than upon a clear rule that remand is mandated.[10] In other words, it appears to this

decision to dismiss their claims against the King Ranch was voluntary, and not an appealable decision made by the State Court, the Shelton Plaintiffs do not view their earlier dismissal as a final abandonment of their claims against the King Ranch. Indeed, the Shelton Plaintiffs want those claims raised again in this suit.

8. After the July 28, 1987, hearing at which the Court orally ordered dismissal, the Shelton Plaintiffs, for the first time, actively sought remand for lack of jurisdiction. For the most part, the cases upon which they rely address fraudulent joinder. Fraudulent joinder is a tactic used *by a plaintiff* to cause a remand by amending his complaint in order to join a nondiverse defendant. Joinder of such a defendant, by a plaintiff, is fraudulent when there is no arguably reasonable basis for predicting that liability might be imposed on the nondiverse defendant under the facts alleged by the plaintiff. *Tedder v. F.M.C. Corp.*, 590 F.2d 115, 117 (5th Cir.1979). In the case before the Court, it is the Defendant who sought to join a potentially jurisdiction-destroying party, and against whom the Plaintiff originally had had a claim at the initiation of this suit in state court, and against whom the Plaintiff again seeks relief once these parties are joined in the suit in federal court. As cited by the King Ranch entities in their Motion to Dismiss the Plaintiffs' Amended Complaint, the more applicable case law is *Owen Equipment & Erection Co. v. Kroger*, 437 U.S. 365, 98 S.Ct. 2396, 57 L.Ed.2d 274 (1978). Unlike the *Owen Equipment* facts, however, this Court finds that the nondiverse party is indispensable, and the case should not proceed without them. Recognition of King Ranch's indispensibility to this suit was further acknowl-

edged by the removing Defendant Exxon in open court at the July 25, 1987, hearing.

9. In *Merrimack* the court cited Fifth Circuit case law prior to the U.S. Supreme Court opinion in *Thermtron Prod., Inc. v. Hermansdorfer*, 423 U.S. 336, 96 S.Ct. 584, 46 L.Ed.2d 542 (1976), for the proposition that "[i]f, in a removal case based on diversity of parties, the district court subsequently discovered that [nondiverse] parties who are indispensible under Rule 19, F.R. Civ.P., had not been remanded, the district court should have remanded the case to state court." *Merrimack*, 587 F.2d at 646 (citing *Jett v. Zink*, 362 F.2d 723, 726 (5th Cir.) *cert. denied*, 385 U.S. 987, 87 S.Ct. 600, 17 L.Ed.2d 448 (1966). *See also IMFC Prof. Serv. of Florida, Inc. v. Latin Am. Home Health, Inc.*, 676 F.2d 152, 156–57 (5th Cir.1982).

10. In *Moses*, the Fifth Circuit held that the district court did not err in initially dismissing state law claims without prejudice in a case removed to federal court on the basis of the court's original jurisdiction over federal questions and suits with the United States of America as a party. *Moses*, 778 F.2d at 273. Like Rule 19 joinder, asserting pendent jurisdiction over a case with strictly state law claims remaining is one of those subsequent events that can destroy a federal court's once proper jurisdiction. The disposition of such cases is discretionary. *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966), addresses the pendent jurisdiction issue. *Provident Tradesmens Bank & Trust Co. v. Patterson*, 390 U.S. 102, 88 S.Ct. 733, 19 L.Ed.2d 936 (1968), addresses the Rule 19(b), indispensable party issue.

Court that the district court has discretion to either remand or dismiss.[11]

This Court chooses to dismiss, seeing no reason to treat these federal court litigants any differently than any other litigants, who properly asserted the federal court's jurisdiction but who subsequently destroyed that jurisdiction. If prejudice to the Plaintiff is relevant because this is a removed case (the Defendant having exercised its right to a federal court), this Court finds there to be no prejudice in fact. Much like the Supreme Court's observation in *Owen Equipment*, this Court notes that the parties cannot circumvent the requirements of complete diversity. 437 U.S. at 377, 98 S.Ct. at 2404. This Court further observes that the Plaintiffs obtained removal jurisdiction by voluntarily nonsuiting the King Ranch. However, the Plaintiffs have not treated the state court dismissal as final. Additionally, the Plaintiffs' claims are not lost because of any applicable statute of limitations.[12]

## RULE 19 JOINDER

### STEP ONE: RULE 19(a)

Under the factors delineated in Rule 19(a), this Court finds that the King Ranch entities should be joined as parties in this suit. As requested by Exxon, the King Ranch is needed so that Exxon, already a defendant in this suit, is not "subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest ... [by

King Ranch who] claims an interest relating to the subject of the action...." Rule 19(a)(2)(ii). As King Ranch also represents the interests of other "Executive Rights Beneficiaries" (other than the Shelton Plaintiffs), it is a party who claims an interest in post–1980 settlement claims. Exxon, in relation to these claims, is more like a stakeholder who will not admit liability but who desires, for economy of litigation, to have all the possible claimants to any increased royalties from the King Ranch leases in this suit. Certainly, the joinder of the King Ranch in this suit, from the viewpoint of Exxon, makes for ease in addressing all claimants and obtaining consistent results.

The more compelling reason to join the King Ranch, however, relates to Rule 19(a)(1). From the viewpoint of the Shelton Plaintiffs, King Ranch is needed to accord complete relief among those already parties. The 1980 settlement between King Ranch and Exxon opens a range of possible joint and/or several liabilities to the Shelton Plaintiffs, and until the standing issue is decided, the same possibilities exist as to post–1980 claims. Indeed, in state court, prior to the 1980 settlement made without the Shelton Plaintiffs, Shelton made claims against both the King Ranch and Exxon, in an apparent statement of possible joint and several liability. Even if Exxon now waived its objection to Shelton's direct suit against Exxon (as it appears to have done in the most recent settlement), that does not change the past events relating to the

---

*Thermtron Prod. Inc., supra,* makes clear that a district court's decision to remand is not reviewable [28 U.S.C. § 1447(d) ] unless the Court relies upon reasons not provided for in 28 U.S.C. § 1447(c). Progeny of *Thermtron* have held, in cases reviewing a district court's decision to remand, that remand *can be used* when jurisdiction is destroyed subsequent to a proper removal. *See, e.g., In re Merrimack Mut. Fire Ins. Co.,* 587 F.2d 642 (5th Cir.1978). It is particularly relevant that the *Merrimack* case involves the issue of indispensable parties. However, the circuit court did *not* directly examine the issue of whether the joined parties were indispensable. Therefore, the circuit court also did not examine the lower court's Rule 19(b) discretionary decision relating to the indispensable party. *Id.* at 649.

**11.** This Court maintains that the Fifth Circuit has not squarely addressed the issue of whether remand is mandatory in removed cases in which subsequent events such as Rule 19 joinder or dismissal of a federal question claim have destroyed jurisdiction. Compare *IMFC Professional Serv.* with *Moses.* Additionally, this Court notes that the circuits do not agree on this issue. *See Carnegie-Mellon University v. Cohill,* 55 L.W. 2342 (3d Cir.1986), *cert. granted,* —— U.S. ——, 107 S.Ct. 1283, 94 L.Ed.2d 141 (1987); *Steel Valley Authority v. Union Switch and Signal,* 809 F.2d 1006 (3d Cir.1987), *cert. filed* 4–10–87.

**12.** Tex.Civ.Prac. and Rem.Code § 16.064 provides a 60–day grace period for the Plaintiffs to refile in a court of proper jurisdiction.

1980 settlement.[13] As to those claims, King Ranch or Exxon may have liability to Shelton, and because of their settlement both King Ranch and Exxon have an interest in reaching a result consistent with that settlement. No matter how the Court views the claims and issues in this case, the Shelton Plaintiffs, Exxon Corporation, and the King Ranch entities have hopelessly intertwined their interests such that all of them must be around for the unraveling.

STEP TWO: PROPER ALIGNMENT OF THE PARTIES

■ The general rule for realignment requires the Court to align the parties according to their real interests in the litigation. *Indianapolis*, 314 U.S. at 69, 62 S.Ct. at 16–17. It appears to this Court that the prior judge of this Court simply accepted the parties' agreement as to who should be Plaintiffs and who should be Defendants. *See* Order signed October 16, 1985, denying King Ranch's Motion to Dismiss at 2. This Court finds that the King Ranch entities should be aligned as Defendants along with Exxon. While the King Ranch entities and the Shelton Plaintiffs both have interests against Exxon, they also have interests substantially antagonistic to one another.

The Court determines that the interests and relationships of the parties in this suit are most analogous to the alignment of parties in a stockholder's derivative suit. Until the standing issue is decided, it is not clear whose claim the Shelton Plaintiffs bring before the Court. In the usual stockholder's derivative suit, the corporation is aligned as a plaintiff because it stands to benefit from a successful suit. *See Smith v. Sperling*, 354 U.S. 91, 77 S.Ct. 1112, 1 L.Ed.2d 1205 (1957). However, there is a subgroup of stockholder derivative suits in which the corporation is aligned as a defendant because it is under control antagonistic to the stockholder plaintiffs' rights. *See Doctor v. Harrington*, 196 U.S. 579, 25

S.Ct. 355, 49 L.Ed. 606 (1905); *Koster v. Lumberman's Mutual Casualty Co.*, 330 U.S. 518, 67 S.Ct. 828, 91 L.Ed. 1067 (1947). The antagonistic corporation will be realigned as a Defendant, even if diversity of citizenship among the parties is thereby defeated. *See Libby v. Urbanek*, 707 F.2d 1222 (11th Cir.1983); *Lewis v. Odell*, 503 F.2d 445 (2d Cir.1974).

In the instant case, the Court's determination of antagonism is made upon a finding that "the management [of the corporation] refused to take action to undo a business transaction or ... it so solidly approves it [that] any demand would be futile...." *Smith v. Sperling*, 354 U.S. at 97, 77 S.Ct. at 1115–16. The record of this case makes clear that the Shelton Plaintiffs sued Exxon because the King Ranch entities would not. In the original state court case, King Ranch was a defendant. This Court does not find that King Ranch's interests (other than those interests which relate to its possible fiduciary duty to the Shelton Plaintiffs) are sufficient to cast the King Ranch in a role as a Plaintiff along with the Shelton Plaintiffs. Whose suit was this case originally? It was not Exxon's nor King Ranch's. The more appropriate side of the dispute for a cross-claim is between King Ranch and Exxon as Defendants. Additionally, King Ranch and Exxon have been known to be compatible "forces," executing two settlements in this suit. The first of those settlements essentially attempted to take Shelton's claims away from him in that King Ranch represented itself as also settling for the Shelton Plaintiffs. What could be a more antagonistic posture than to settle for the person suing you?

STEP THREE: RULE 19(b) INDISPENSABLE PARTY

■ With King Ranch joined in this suit and aligned as a Defendant, complete diversity of citizenship among the parties is

---

**13.** Most recently, the parties entered into additional settlements for the post–1980 claims. In this most recent agreement, however, King Ranch does not represent the Shelton Plaintiffs and Exxon allows Shelton to sue directly on the post–1980 claims. The Court does not fully comprehend why Exxon has taken apparently

inconsistent positions concerning the standing issue. The Court notes, however, that by virtue of the inconsistent stance, both King Ranch and Exxon may have potential liability to Shelton regardless how the standing issue is ultimately resolved.

destroyed and the Court is without jurisdiction to hear the case. Consequently, since King Ranch cannot be made a party without destroying jurisdiction, the Court must "determine whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed, the absent person being thus regarded as indispensable." Fed.R.Civ.P. 19(b). Furthermore, Rule 19(b) lists four factors the Court is to consider in making the decision to proceed without the party or to dismiss the case because the party cannot be joined. Those factors are the following:

1. What potential prejudice to the absent party or other parties is there if a judgment is rendered without the absent party?
2. Can relief be adequately shaped to avoid this potential prejudice?
3. Will a judgment rendered in the person's absence be adequate?
4. Will the Plaintiff have an adequate remedy if the action is dismissed for nonjoinder?

The first factor really asks if any party presently in the suit will be exposed to a new action by the absent party. *See* Official Comments to Fed.R.Civ.P. 19(b). This was exactly Exxon's concern and reason presented for the proposed joinder of the King Ranch. Clearly, the Shelton Plaintiffs also have claims against the King Ranch, claims they sought to bring via amended complaint once the King Ranch was initially joined. If there is a finding that the Shelton Plaintiffs lack standing to sue Exxon, their only claim is against King Ranch. If there is a finding that the Shelton Plaintiffs can sue Exxon directly, they have a suit against King Ranch for supposedly representing the Shelton Plaintiffs in the settlement of the pre–1980 claims.

As to the second factor, this Court does not know how it could shape nonprejudicial relief for all the parties in this case, considering the fact that the parties themselves have tried and failed. Two attempts at settlement by all or some of the parties have not resolved all the problems among the parties. Further, the settlements themselves pose interesting problems of conflicting results.

Just as these two prior settlements between King Ranch and Exxon did not resolve all the various claims in this case, a judgment without King Ranch would be inadequate. As discussed above, no matter how the standing issue is eventually decided, the Shelton Plaintiffs have claims against the King Ranch.

Finally, the Plaintiffs have an adequate remedy in state court if this case is dismissed for lack of jurisdiction. In Texas, the 60–day "saving statute" will allow them to refile in the proper jurisdiction.

Furthermore, the Court notes that in the analogous situation of a stockholder's derivative suit, the corporation is an indispensable party. *City of Davenport v. Dows*, 18 Wall. (85 U.S.) 626, 21 L.Ed. 938 (1874); *Ross v. Bernhard*, 396 U.S. 531, 90 S.Ct. 733, 24 L.Ed.2d 729 (1970).

Therefore, for the reasons stated above, the prior orders of this Court are affirmed. It is

ORDERED that this action be DISMISSED without prejudice. Furthermore, any and all other relief requested is DENIED, for lack of jurisdiction.